Herbert, J.
The parties to this action are not in accord as to the issue which is before us. Defendant asserts nine points as his statement of the questions of law involved, while the plaintiff premises her statement as to the issue in this appeal on certain assumptions which are not accepted.
*278 As we see it, the question before this court is whether in an action for divorce, where a decree has been granted to the wife because of the husband’s aggression, an order for permanent alimony awarded therein based upon an agreement between the parties may be modified so as to relieve the former husband from further payments of alimony after subsequent marriage of the former wife to another man capable of supporting her, where there is no claim of mistake, misrepresentation or fraud, and jurisdiction with reference to such order has not been specifically reserved by the court.
Plaintiff contends that such a decree may not be so modified because of the decision of this court in the case of Newman v. Newman, 161 Ohio St., 247, 118 N. E. (2d), 649, the syllabus of which reads as follows:
“An alimony decree based upon an agreement between the parties is not subject to modification by a court after term in the absence of mistake, misrepresentation or fraud and in the absence of a reservation of jurisdiction with reference thereto. (Law v. Law, 64 Ohio St., 369, approved and followed.) ”
In the Newman case, the wife obtained a divorce and alimony decree from her defendant husband in 1933. The decree incorporated the provisions of a separation agreement as to alimony. In 1952, she filed a petition seeking modification of the decree as to the amount of alimony, claiming ill health as to herself and changed financial and tax conditions as to both. The husband filed a motion to strike numerous paragraphs from plaintiff’s petition for modification, which the trial court treated as a demurrer and sustained. The Court of Appeals reversed the judgment of the trial court, and this court reversed the judgment of the Court of Appeals and affirmed that of the trial court.
The syllabus in the case of Law v. Law, 64 Ohio St., 369, 60 N. E., 560, is as follows:
“A divorce being decreed for the aggression of the husband, and alimony being adjudged to the wife in accordance with an agreement of the parties, the terms of the decree as to alimony are not, if unaffected by fraud or mistake, subject to *279 modification upon a petition filed by the former husband after the term at which the original decree was made.”
In the Law case, the husband sought a reduction of the annual allowance of the alimony almost five years after the decree was granted, regardless of the fact that the plaintiff wife had not remarried.
The trial court reduced the allowance although not in the amount prayed for and the Circuit Court modified that amount. This court in a four-judge per curiam decision reversed the lower-court judgments and dismissed the petition to modify.
It should be particularly noted that in neither the Newman case nor the Law case was the issue of remarriage by the former wife presented, since in each case the separation agreement provided for termination of alimony in such event, and neither former wife was remarried.
Remarriage was not involved in the case of Mozden v. Mozden, 162 Ohio St., 169, 122 N. E. (2d), 295, which approved and followed the Newman and Law cases.
There seems to be a paucity of cases in this jurisdiction presenting the same factual situation as that presented here, as in most instances the parties provide in their agreement for the termination of permanent alimony in the event of remarriage by the wife.
In the case of King v. King, 38 Ohio St., 370, plaintiff married one Charles King in 1870, three children being born of the marriage. In 1878 plaintiff obtained a decree of divorce and custody of the youngest child, the other two being awarded to the father. As alimony, the court decreed $2,000 to plaintiff and the further sum of $1,500 on condition that she would release dower in defendant’s lands. From this alimony decree defendant appealed. While the appeal was pending, plaintiff, Julia King, moved to Michigan and in 1879 was married to Romeo King. After this marriage was established before the District Court on appeal, that court awarded the sum of $1,000.
While that case is not comparable to the one now before us, it is cited as the only case of record in this court wherein ali *280 mony was ordered following the subsequent marriage of the former wife to another man. The order in that case was, in effect, however, a reduction of the alimony awarded by the trial court. In the opinion in that case, it was stated by Chief Justice Okey:
“Morever, while designated as alimony, the sum was awarded, not strictly as alimony (2 Bishop’s M. &'D., Section 553), but doubtless with a view to the support of the appellant’s own child.”
There is no question involving support of children in the instant case.
In the case of Olney v. Watts (1885), 43 Ohio St., 499, 3 N. E., 354, the husband obtained a decree of divorce from his wife on the ground of willful absence. In the decree he was ordered to pay certain amounts of alimony to the defendant wife on specified dates. Following the first two payments the wife remarried, whereupon the husband in a separate action sought an injunction “to restrain the collection of the remaining installments of alimony, and that on final hearing the unpaid installments be set aside or modified, as the court might think proper.”
The third paragraph of the syllabus in that case is as follows:
“Where alimony had been granted, in installments, to a divorced wife, and she is afterward remarried to a man financially able to, and who does, in fact, support her, these facts would prima facie be a good cause for modifying the former decree so as to reduce the amount to be paid for her support to a nominal sum, or such sum as, in the changed condition of the defendant, the court might deem just and reasonable.”
The cause was remanded to the trial court. This language in the opinion (page 508) is of interest:
“If, however, it shall, in the further progress of the case, appear that the former decree, instead of being in the nature of alimony payable in installments for the support of the wife, was in the nature of a permanent division of the husband’s property, and that the parties fixed the same by their own agreement, and the action of the court in the premises was simply an *281 affirmance of the agreement by consent, this, if alleged and proved, may furnish a complete defense. As to that we express no opinion now.”
That paragraph of the Olney case syllabus quoted above follows the general rule as stated in 2 Nelson on Divorce and Annulment (2 Ed.), 432. (See, also, Martin v. Martin, 225 Ark., 677, 284 S. W. [2d], 647.) The Olney case has never been overruled or modified, although it is mentioned and distinguished in the opinion in the Newman case.
The principle established in the Olney case is far more pertinent to this case, however, than that in either Newman or Law.
The Olney and King cases, supra, are the only reported cases we can find in Ohio involving the issue of modification of a permanent alimony order in the event of remarriage by the wife, and in both cases this court upheld the principle.
This brings us to a consideration of the function and purpose of alimony. (See Section 3105.18, Revised Code.)
In her original petition (for alimony alone) plaintiff here alleged that “she is not employed and has no income whatsoever, by reason of which she is dependent entirely upon the defendant for maintenance and support.” Although this allegation is not carried into her amended petition, she there prays “that she be decreed a divorce, permanent alimony and such other and further relief as may be just and proper in the premises. ’ ’
The obligation of alimony was considered in the case of Fickel v. Granger, 83 Ohio St., 101, 93 N. E., 527, 32 L. R. A. (N S.), 270. Paragraph one of the syllabus there states:
“Alimony * * * is an award by the court upon considerations of equity and public policy and is founded upon the obligation, which grows out of the marriage relation, that the husband must support his wife, which obligation continues after legal separation without her fault.”
In the case of Friedman v. Schneider (Supreme Court of Florida, 1951), 52 So. (2d), 420, it is stated in the opinion: “True alimony, money required to be paid by a man to his former wife for her subsistance, derives from the legal duty to support her which he assumed when they married.”
*282 We think the true purpose of alimony is correctly stated in those cases. It is almost universally accepted that, where there has been a divorce granted for the husband’s aggression, he must continue to provide support for the wife, and for that purpose an award of alimony is usually made. Where, however, a former wife remarries a man capable of supporting her, the theory of the obligation of the former husband to continue her support is not tenable since the wife has a new husband charged by law with that duty. In fact, it seems rather obnoxious to a sense of decency to require that a wife be supported by both her present husband and former husband or husbands.
The question then arises whether it is against public policy to enforce a decree having such a result even though it is based upon an agreement that is silent as to such a contingency.
In some states, notably Illinois, New York, New Jersey and California, provision is made by statute to terminate alimony awarded to a wife from her divorced husband in the event of her remarriage.
According to the weight of authority in other states, the wife’s remarriage to a man capable of furnishing her suitable support constitutes a ground for terminating alimony, although the remarriage of such divorced wife does not ipso facto terminate the former husband’s obligation to pay alimony. See 112 A. L. R., 253 et seq.; 6 A. L. R. (2d), 1296.
The following language from the case of Alsop v. Commissioner of Internal Revenue (1937, C. C. A.3), 92 F. (2d), 148, is pertinent here:
“Though it is generally seated that the remarriage of the wife does not automatically release the former husband from the duty of supporting her (19 C. J. 625), her remarriage is almost universally held to be sufficient grounds for an order suspending or abrogating further payments of alimony upon application therefor by the former husband. * * * [Citing-many authorities.]
“* * * It has been held that 'good public policy would not compel a divorced husband to support his former wife after she has become1 another man’s wife, except under extraordinary *283 conditions, which she shonld be required to prove,’ and that ‘the cases wherein the alimony should be continued after the remarriage are extremely rare and exceptional.’ # *
The substance of the last paragraph of the preceding-quotation was taken from the case of Cohen v. Cohen, 150 Cal., 99, 88 P., 267, 11 Ann. Cas., 520, decided in 1906 before the adoption of the California statute providing for termination of alimony payments to an ex-wife upon her remarriage. In the Cohen case, the court, after declaring that “good public policy would not compel a divorced husband to support his former wife after she has become another man’s wife, except under extraordinary conditions, which she should be required to prove,” continued with the statement that “unless such conditions are shown by her to exist, the court should, on the former husband’s motion, cancel all payments accruing after the remarriage, in all cases where, as here, there are no children and the allowance is based solely upon the husband’s probable earning capacity, or upon his breach of the marriage vows, and not upon existing property rights. ’ ’
In Cary v. Cary (1930), 112 Conn., 256, 152 A., 302, the court stated as follows:
“Season requires us to hold that the remarriage of the wife should relieve the husband from the obligation of supporting the wife of another man. To permit her to have alimony from the first husband as an equivalent for her support after she had secured the legal obligation from the second husband to support her would give her support from her present and her former husband, and for each subsequent divorce for the husband’s fault she might again be awarded alimony for her support. The legislative intent never could have contemplated such a situation. It would offend public policy and good morals. It is so illogical and unreasonable that a court of equity should not tolerate it.
4 4 # # s*
“The better rule which we adopt, save in the most exceptional circumstances, draws from the voluntary action of the wife in remarrying the inference that she has elected to obtain her support from her second husband and has thereby aban *284 doned the provision made for her support by the court in its award of alimony.” See, also, Lasprogato v. Lasprogato, 127 Conn., 510, 18 A. (2d), 353.
In Eaton v. Eaton (1939), 90 N. H., 4, 3 A. (2d), 832, the following appears in the opinion:
“Public policy, social morals, private decencies, and the legal conceptions of the institution of marriage all unite in insistent demand that the libelant’s new marriage be held to constitute her abandonment of the right to further payments of alimony from her former husband. ’ ’
It is contended here that the parties had the right under Section 3103.06, Revised Code, to enter into an agreement such as that made in this case, and that once made it “is binding upon both parties and cannot be avoided unless and until a court of equity has determined that it is unenforceable because of fraud or a violation of the general rules controlling actions of persons occupying confidential relations,” citing Meyer v. Meyer, 153 Ohio St., 408, 91 N. E. (2d), 892.
In the Meyer case,, there was a separation agreement between the parties which provided for a division of the property and that in the event of subsequent action for divorce neither party would ask for alimony. That action was brought in equity and required an avoidance of the separation agreement before alimony could be allowed.
Referring to the language contained in the decree here as quoted supra, it is to be noted that such language is not indisputably clear. Stripping the statement down to its bare essentials, the trial court said, in substance, that “whereas the defendant has agreed to pay and the plaintiff has agreed to receive as permanent alimony the sum of $150 per month, said agreement is hereby approved and confirmed and the defendant is ordered to pay to plaintiff the sum of $150 per month on the first day of each month hereafter as and for permanent alimony. ’ ’
From the record it is not clear whether the agreement was written or oral so that we are powerless to now determine whether the parties intended between themselves that payments would terminate on the death of the defendant or the death of plaintiff or in the event of her remarriage. In fact, the entry *285 does not recite the word, “hereafter,” as being a part of the agreement, although it is a part of the order for payment. In view of these ambiguities, such an entry raises the further query as to'whether the court, by using only the word, “hereafter,” in the order, implied a reservation of continuing jurisdiction as to alimony.
In the case of Hassaurek v. Markbreit, Admr., 68 Ohio St., 554, 67 N. E., 1066, the husband obtained a divorce from the wife for her aggression. The decree provided, “it is further ordered by the court, the plaintiff having expressed a willingness and desire to make suitable provision for the defendant, that the plaintiff shall pay unto the defendant $1,200 per annum in 12 equal monthly installments * * * continuing so long as the defendant shall live and shall remain unmarried, but said payments shall cease upon her death or remarriage. ’ ’
There the language of the order is clear and unambiguous. Following the husband’s death, payments were continued for 14 years when further payments were refused. This court unanimously held that the order of alimony contained in the decree was a binding obligation upon his estate until her death or remarriage.
In the case of Snouffer v. Snouffer, 132 Ohio St., 617, 9 N. E. (2d), 621, the question at issue was, as stated in the opening sentence of the opinion, “whether alimony awarded by court order, to be paid to the wife monthly ‘so long as,she remains unmarried,’ continues beyond the decease of the husband.”
The ambiguity of the order there was clarified in a four-to-two decision. The syllabus in that case states:
“Where, upon the granting of a divorce to the wife for aggressions of the husband, there is an equitable division of the husband’s real and personal estate made, and the portion retained by the husband is ordered to be ‘held and owned by him, free and clear from the inchoate dower estate’ of the wife, and the wife is further awarded, as alimony, $100 per month, payments to continue so long as she remains unmarried, in the absence of contract or statutory provision to the contrary, such decree with respect to the installment alimony payments will be held not to embrace periods beyond the death of the husband.”
In the case of DeMilo v. Watson, Exr., 166 Ohio St., 433, 143 N. E, (2d), 707, this court held:
*286 “By virtue of two amendments in 1951 to the statutes relating to divorce and alimony, now incorporated in Sections 3105.18 and 3105.20, Eevised Code, a court granting a divorce , may, in the expressly sanctioned exercise of general equity ; power and jurisdiction and regardless of the ‘aggression’ of either party, embody in the judgment an order for the pay- $ ment of alimony in future installments, which order will be operative according to its terms against the estate of the party, charged with such payments, after his death.”
Thus, we see from those three cases that alimony may be continued beyond the death of the husband where the language of the court order or agreement (if there is one) between the parties is clear. For obvious reasons, of course, installment alimony payments terminate with the death of the -wife. The equity power mentioned in the DeMilo case was fully recognized by the Legislature in 1951 when it amended Section 8003-21, General Code (Section 3105.20, Eevised Code), by adding the sentence, “In any matter concerning domestic relations, the Court of Common Pleas shall not be deemed to be deprived of s its full equity powers and jurisdiction.” For further discussion of this power see, also, Robrock v. Robrock, 167 Ohio St., 479, 150 N. E. (2d), 421. ,
Compare, also, two cases involving agreements of parties for the support of minors. In the case of Corbett v. Corbett, 123 Ohio St., 76, 174 N. E., 10, this court held, with respect to the care and support of minors, provision for which was made in the decree, that the jurisdiction of the court continued for the period of minority of such children without any expressed reservation in the decree itself. In that case the wife sought and was granted an increase in the amount previously allowed ¡ for the support of the children. A little more than ten years later the case of Tullis v. Tullis, 138 Ohio St., 187, 34 N. E. (2d), 212, was decided. There, the motion to modify was made by the former husband in which he sought to lessen the amount of support ordered for the minor children. The syllabus in that case states:
“A decree in a divorce action, unconditionally fixing the amount and method of payment by the husband for the support : of a minor child pursuant to and in accordance with a previous . *287 contract of separation between the husband and wife providing for complete property settlement and support to their minor child, which contract is specifically approved by the court and made a part of the decree, may not, in the absence of fraud or mistake, be subsequently modified by the court so as to lessen the amount of support for such minor child.”
It is apparent from those two cases that continuing jurisdiction is implied regardless of any agreement between the parties in order that adequate support of minor children may be assured, but that no decree fixing the amount for such support based on an agreement between the parties may be modified so as to lessen such amount. Again we have an exercise of equitable power having due regard for contractual agreements.
In the Tullis case, Hart, J., stated in the opinion (page 192): “This court has also held that even though such a contract has been made a part of the decree of divorce, yet because of the continuing jurisdiction of the court and because of the demands of public policy, the court may subsequently increase the support allowance for children if changed circumstances require it, since a parent cannot by his own contract relieve himself of the legal obligation to support his minor children.” It is, of course, a well known rule that equity will not enforce an illegal or fraudulent contract or one which is against public policy. Public policy having been indicated in the Tullis case with respect to requiring adequate support of minor children by the father regardless of a separation agreement, it follows that public policy should not require the continuance of alimony payments by a former husband to the divorced wife after she has by her remarriage relieved him of the legal obligation to support her.
The Newman case recognizes the continuing equity power of the courts in matters relating to divorce and alimony in that it made the agreement there “not subject to modification * * * in the absence of mistake, misrepresentation or fraud.”
Excerpts from two cases in other jurisdictions are also pertinent here.
In the case of Hartigan v. Hartigan, 145 Minn., 27, 176 N. W., 180, in which the Supreme Court of Minnesota ordered discontinuance of alimony after remarriage of the wife, the opinion contains the following cogent statement:
*288 “It is impossible to separate the interest of a divorced wife from that of her second husband. A payment to her must of necessity, redound to the benefit of both.”
And in the case of Kuert v. Kuert (1956), 60 N. M., 432, 292 P. (2d), 115, the court stated in the opinion as follows:
< í >* # # we announce our rule thus:
‘ ‘ On the application of the divorced husband to abate support payments to the divorced wife on the ground of her remarriage such application should be granted as of the date of her remarriage unless she proves extraordinary conditions justifying continuance of the former husband’s duty to support his former wife after she has become the wife of another man, and the evaluation and effect to be given these conditions rests in the sound discretion of the trial court.
í Í # # *
“We think further, that the rule which we have announced is consistent with the dictum in our Mindlin decision, with our holdings in other cases in this field, with sound public policy and plain common sense. When the wife contracts a subsequent marriage with another, thus creating under Section 57-2-1 N. M. S. A. 1953 a duty of support in him, good public policy does not demand that she continue to receive support from her first husband unless she prove exceptional circumstances. The purpose of alimony is to provide support for the former wife, Lord v. Lord, 37 N. M., 454, 455, 24 P. (2d), 292. When the purpose fails so should the right. Proof of his former wife’s remarriage establishes the divorced husband’s prima facie case for modification of alimony payments coming due subsequent to such remarriage. To paraphrase Justice Zinn in the Mindlin case, the trial court is not helpless before the spectacle of a woman having her cake and eating it too; rather the trial court is empowered to determine how much if any cake the former husband ought to be required to furnish subsequent to her remarriage. A contrary decision would result in what might well be described as: quasi-polygamy by court order.”
It is quite apparent from this array of authorities cited and quoted from, and it is the conclusion of this court, that it is contrary to good public policy to require a divorced wife’s former husband to continue to make alimony payments to her *289 after her subsequent marriage to another man capable of supporting her, and that such marriage constitutes an election on her part to be supported by her new husband and an abandonment of the provision for permanent alimony from her divorced husband, and reservation of jurisdiction is implied so that the equitable power of the court may be invoked to modify its order 'accordingly.
The decisions in the cases of Law v. Law and Newman v. Newman, supra, are clearly distinguishable from the present case in that the agreement in each of those cases specifically provided for termination of alimony in the event of the wife’s remarriage, and the issue of remarriage was not in either case.
The judgment of the Court of Appeals is reversed and this cause is remanded to the Court of Common Pleas for further proceedings in accordance with this opinion.

Judgment reversed.

"Weygandt, C. J., Zimmerman, -Taft, Matthias, Bell and Peck, JJ., concur.