Judge Robertson
delivered the opinion of the Court.
This is a suit in chancery, brought in 1823,. by the heirs of Samuel Clay, deceased, against the administrator with the will, appexed, of the decedent, and the securities, of the administrator, and against the administrator and heirs, of Thoma,s Bed-ford. The bill, alleges that the will of S. Clay, which was proved in 1810, directs that 1,200 acres of Ja.nd, in Henderson co.unty, Kentucky, for a title to which, ho held the bond of T. Bedford, should be sold, and 200 acres of land in Bourbon county, should be purchased with the proceeds of sale, for his son, Thos. Clay, and the residuum of the sale money, if any, should be equally divided amongst his other children. That the administrator got the possession of the bond; that it was not known what he' had done with it, or with the land, but believed that he had, by some means, rendered himself responsible for the value of the land, and, therefore, a decree to that extent, is asked against the administrator and his securities.
An amended bill states, that Bedford had no title to the land, and prays against his administrator and heirs, a decree for the consideration, ($1,600,) and interest from its advance, which was at the close of the year 18,00.
No answers are filed, except by the securities, who deny their liability, and require proof of all the material allegations of the bill.
Pacts proved .in the cause.
Decree of the circuitcourt
-So decree deíedVaiñst a party, unless there , tuafo^con60" struotive°service of proceS8“
The statute of l8*?'’1 Di* fating p’rooee" ding8inChy. vs. unknown affidavit?11168 »
interest tin payment upon aggregate 1000005.’6r"
jfc js proved that the bond on Bedford, dated in 1800,. ^01’ a title to 1,200 acres of land in Henderson, was the possession of the administrator; that he went into the Green river country for the purpose of getting a title for the land, and not finding all the heirs of Bedfor<js left the bond-with one of them, who promised to procure a deed and send it to him; that the administrator said that the heir with whom the bond was left, wrote to him that he had lost it. It is also proved that Bedford had no title to the land described in the bond, but had a claim in the same neighborhood,, which had been-sold for his debts.
In this state of case,the circuit court decreed against the administrator and his securities, $1,600, with interest from the 1st of January, 1801, until paid; from which the securities have appealed to this court.
There are several obvious errors-in the record:
First: As the administrator had-removed from the state before the institution of the suit, the court had-. no right to decree against him, without service of pro-cess, either actual or constructive; and neither is shown. There is an order to advertise, hut it does not aPPear that it was:ever executed. The decree takes. it for granted, that it had been regularly published;but this is not sufficient. The certificate of publication should appear. It cannot be dispensed with, because if there ever had been one, this court cannot decide on its sufficiency, without seeing it..
Second: Some of the heirs of Bedford are alleged to be unknown, and the others non-residents; but there i® no affidavit that any of the heirs were unknown, Such an affidavit, to be filed in the clerk’s office, is required by the act of 1815, 1 Dig. 61. As, therefore,, the heirs of Bedford were necessary parties, the court erred in rendering a decree without bringing them regularly before the court*
Third: It does not appear that the order of publication against Bedford’s heirs, had-been executed.
Fourth: In decreeing damages, compounded of the principal advanced, and legal interest from the date of the payment, it was erroneous to decree accruing interest after the decree and until final payment.
Deoree againstadm’r neons unless fraud or proved;
Then no greater responsihility than the caused.‘nJur7
An ai1min!?' blefunlesVht* a°t with bad faith.
Qucre. Doestke statute of 181°’ extend" ing the power oí administrators with the will annexed, operate on such as obtained administration prior to the date óf the act.
*167 The foregoing errors, although comparatively subordinate, are sufficient for the reversal of the decree.
But there is an error more radical. The allegations and proofs did not justify the "decree against the administrator and his securities, even if the cause had been well prepared.
it does not appear that the administrator was guilty of fraud or gross negligence. It does not appear that he ever received a cent for the 1,200 acres of land, or could have recovered any thing. There is no evidence that Bedford’s heirs had title to the land, or were able to refund the consideration, and that they were accessable, or that the heirs of Clay hud sustained any other injury, by the acts of omissions of the administrator, than the delay and inconvenience peculiar to a suit in chancery on the lost bond, and which would not be incident to a suit at law against Bedford’s heirs, for a breach of the bond. But the reverse of all this is proved, or may be inferred from the proof. It was, therefore, not just and proper to make the administrator and his securities responsible for the price of the land, with interest.
If he had been delinquent, be should have been subjec'led to liability to no greater extent than the injury actually sustained by Clay’s heirs. And from the ^proofs in the cause, that was only the difference in the Cost of a proceeding in chancery and at law, against Bedford’s heirs. ITis responsibility could not be greater, unless it bad been proved that by his fraud or gross negligence, a greater injury had resulted to Clay’s heirs; and to show this, it should appear that Bedford’s heirs could have conveyed title, or paid the value of the land, and by the negligence of the administrator they had been suffered to part with the title, and become insolvent: See Thomas vs. White, 3. Litt. Rep. 177; Head, &c. vs. Perry, &c. 1 Mon. Rep. 257. An administrator is not liable, without proof of bad faith; same cases and 4th Johnson’s Ch’y. Rep. 419. But there arc other and equally conclusive objections to the decree.
The administrator with the will annexed, was appointed before the act of 1810, vesting such an administrator with the powers delegated by the will to *168 executors-; and, therefore-, in our opinion, it is very questionable whether that act could give him more power than he had when he was appointed. It it could not, as w'e are inclined to believe, consequently; as without that act he had no jiow'er to sell land devised to be sold, he has neVef had any power in relation to the land, and could not be responsible for not obtaining title to it, or fór not selling it. Be this, however, as it may, there is no evidence of fraud or of bad faith, or of any special damage to Clay’s heirs. Nor could the administrator be made responsible for not suing on the bond, for damages; because,
If testatot devise the sale of land for which he holds a bond for a conveyance; it is a determination of his election, and controls his representative to’require a specific performance.
Hanson, for the appellants.
First: It docs not appear that there had been ri breach in the lifetime of the testator, and for a breach after his death, his heirs alone could sue.
Second:. The will devised a sale Of the land; and therefore; the administrator ought not to have sued for a breach of covenant to convey title to it. Forifthére had been abreach before the death of the testator; he had, by his will, declared his election to obtain the land specifically, and not accept in lieu of it; the Value in 1800. The heirs of Clay might have sued for a title, or for damages; and from any thing appearing in the record, they had the sole power to do so. It is quite clear that even they could not have gotten the land. But having the right to sue Bedford’s heirs for breach Of the bond, if it obciirrcd after S. Clay’s death, they had a right to the bond. And if the administrator withheld it from them, and by gross negligence, lost it, they might justly ask of him to pay them the difference between a suit in chanc'ery and one at law; But even to entitle them to this limited demand, they must show that the administrator refused to let them have the bond. The decree is erroneous on the merits.
As the evidence did not authorize any decree against the securities, the court of Bourbbn can entertain no jurisdiction against the; non-residents, the land not being in Bourbon; and, therefore, if the appellees shall desire to proceed against the non-residents, they must do so by a new suit.
Decree reversed, and the cause remanded with instructions to dismiss the bill.