HASSAUREK V. MARKBREIT, ADMINISTRATOR.

Decided, June 23, 1903—68 Ohio State, p. 554.

*Suit for Divorce—Section 5700, Revised Statutes—Rights of Parties When Divorce·Granted Upon Wife's Aggression—Wilful Absence for Three Years—Court May Adjudge to Her Share of Husband's Property—Parties May Agree that Husband Pay Sum Every Month —His Estate Bound in Case of Death, When.*

When upon the trial of a suit for divorce the court finds from the evidence that the wife has been wilfully absent for more than three years and that the husband is entitled to a decree upon that ground, the court has jurisdiction under Section 5700, Revised Statutes, to adjudge to her such share of the husband's property as it deems just and reasonable, and if the parties thereupon agree that such division shall be made by adjudging that he shall pay to her a sum named every month during her life and such agreement is carried into the decree, there is imposed upon him, and upon his estate in case of his death before hers, a valid obligation according to the terms of the decree.

Error to the Circuit Court of Hamilton County.

Plaintiff brought her action in the court of common pleas to recover from the defendant $600, the sum of six monthly installments which were admitted to be unpaid, and which she claimed to be due her on the following state of facts: In 1881, the late Frederick Hassaurek and the plaintiff were husband and wife, and the parents of two children. In that year he brought suit for the dissolution of the marriage relations upon the sole ground of the wife's willful absence for more than three years. She was personally served in Hamilton county, but did not answer. Upon the hearing the court found that the allegations of the petition were true, and it decreed the dissolution of the marriage relation and awarded to the husband the custody of the children, but providing that the mother should be permitted to visit them at all reasonable times. The decree contained the following provision for the wife:

"It is further ordered by the court, the plaintiff having expressed a willingness and desire to make suitable provision for the defendant, that the plaintiff shall pay unto the defendant $1,200 per annum in twelve equal monthly installments in advance beginning January 1, 1882, and continuing so long as the defendant shall live and shall remain unmarried, but said payments shall cease upon her death or remarriage."

At the time of the trial of the suit for divorce the husband was the president of the Volksblatt Co., whose capital stock was $130,000, of which he owned $50,000 par value, while its actual value was much greater. This stock was the substance of his estate. From that time until his death he continued to be the president of the company and the present defendant was its manager. From the death of Mr. Hassaurek until now the defendant has been both president and manager. The monthly installments provided in the decree were paid by Mr. Hassaurek in accordance with its terms until his death, which occurred in France in October, 1885. Upon his death the defendant was appointed special administrator; he acted in that capacity and paid to the plaintiff the monthly installments according to the terms of the decree until June 24, 1886, when, the will of Mr. Hassaurek having been admitted to

probate, Eunice Hassaurek, with whom he had in the meantime intermarried, was appointed its executrix; and, until her death in May, 1891, she continued to pay to the plaintiff the monthly installments according to the terms of the decree. Upon her death the present defendant was appointed administrator *de bonis non* with the will annexed. He continued the payment of the monthly installments according to the terms of the decree until July 1, 1899, when he refused to make further payments. From the date of the decree in 1881 until June 1, 1899, the payments were made in dividend checks of the Volksblatt Co., the amounts being charged successively against Mr. Hassaurek, as administrator, and his children, and this was done with the acquiescence of all against whom the charges were made. The defendant's refusal to make further payments in 1899 was in compliance with a demand from the executors of the son of the plaintiff, who had died shortly before. When the defendant came into possession of the papers of Mr. Hassaurek he found among them a copy of the decree upon which the plaintiff's suit is founded.

In 1891 the defendant filed in the probate court an account of his administration taking credit, among other things, for the amount of nine monthly payments made to the plaintiff just before the filing of the account, and filing with his account receipts from the son and daughter of the plaintiff, each for fifty shares of the stock to the Volksblatt Co. Until after the refusal to make further payments in 1899 the plaintiff did not file with the administrator a claim for money due under the decree, nor did she ever have notice of any intended or actual distribution of the estate of Mr. Hassaurek. She has remained unmarried from the date of the decree.

The jury were directed to return a verdict for the plaintiff and a judgment followed it. The circuit court reversed the judgment and rendered judgment for the administrator for the reason, as shown by its journal, that:

"The said court erred in instructing the jury to bring in a verdict for the plaintiff below and in refusing to instruct the jury to bring in a verdict for the defendant below, for the reason that the court of common pleas had no jurisdiction to render the judgment sued on in so far as it required the payment of annual install-

ments as alimony beyond the natural life of Frederick Hassaurek without fixing a definite sum from which the installments were to be paid."

*Judson Harmon, Alfred C. Cassatt, Ernst, Cassatt & McDougall* and *Harmon, Colston, Goldsmith & Hoadly,* for plaintiff in error.

*Edward M. Ballard* and *Walter M. Schoenle,* for defendant in error.

SHAUCK, J.; BURKET, C. J., SPEAR, DAVIS, PRICE and CREW, JJ., concur.

There was, upon the evidence, no question of fact for the consideration of the jury. The general question is whether, upon the conceded facts, the judgment should be for the plaintiff, as was held in the court of common pleas, or for the defendant, as was held in the circuit court. The decree of divorce upon which the plaintiff's action is founded is easily recognized as the termination of marital relations between a pair with whom respect had survived devotedness. Its terms show that the natural relations between the mother and her children were to continue so far as was compatible with a severance of the relations between the parents; that although the evidence established the allegations of the wife's willful absence, the husband desired to secure to her during her life such support as was consistent with his means; that it was by his request that his desire found expression in the terms of the decree, and that the obligation which it imposed was to continue during her life without regard to the duration of his own, if the wife should not by remarriage acquire other means of support. The binding character of this obligation was recognized throughout eighteen years by all the members of the family of the parties. It is now disputed by strangers. Certainly an arrangement so consonant with natural justice should be enforced unless it is forbidden by some inflexible rule of the law so beneficent in its general operation that it should be maintained, notwithstanding hardships which may result from its application to particular cases. Such a rule was thought to be applied to the case in the circuit court when it reversed the judgment of the court of common pleas because that court "had no jurisdiction to render the judgment sued

on in so far as it required the payment of annual installments as alimony beyond the natural life of Frederick Hassaurek without fixing a definite sum from which the installments were to be paid." To support this conclusion much is urged and many cases are cited in the elaborate briefs of counsel for the defendant. That inquiry may be effective, attention should be given to the precise nature of the case. There is no direct attack upon the decree of 1881 by a proceeding to reverse it as erroneous. It is attacked collaterally as void. There is no occasion for considering what presumption should be indulged when the decree in a case of this character is silent with respect to the time during which payments are to be made, since it is here provided expressly that they should continue during the life of the wife, she remaining unmarried. Nor need we consider the nature of the obligations upon which decrees for alimony are founded since the finding of the court upon the evidence that the wife had been willfully absent for more than three years, and its judgment that the marriage relation should be terminated for that reason, excluded her right to alimony. The court having concluded that a divorce should be decreed for her aggression, its further jurisdiction was defined by Section 5700 of the Revised Statutes, as follows:

"And the court may adjudge to her such share of the husband's real or personal property, or both, as it deems just and reasonable."

In view of the wide discretion vested in the court in making that adjudication it can not be said that its power to adjudge is limited to the allegations of the pleadings as in *Rosebrough* v. *Ansley*, 35 Ohio St., 107. The court having this duty to perform and having the parties and their counsel before it, with their consent and at the request of the husband adjudged to the wife during life the equivalent of less than one-third of the dividends of the stock owned by the husband. Whether this judgment would have been an erroneous exercise of the jurisdiction which the statute vested in the court if it had been rendered without, we need not consider. It must now be regarded as settled beyond controversy that when, in an action for divorce, the court is satisfied from the evidence that the marriage relations should be annulled, the parties

are competent to contract with respect to such changes in property rights as are to result from the severance of the former relation, and their contract, if approved by the court, may be carried into its decree, thus becoming a perpetual obligation. *Petersine* v. *Thomas,* 28 Ohio St., 596; *Julier* v. *Julier,* 62 Ohio St., 90; *Law* v. *Law,* 64 Ohio St., 369. Whether the request of the husband that the decree should be in the terms employed was prompted by a desire to advance his own interests by retaining personal control of the stock which would otherwise have been adjudged to the wife, or by the conviction that in this mode her future support would be more secure, can not be material to the validity of the obligation. The judgment of the circuit court can not stand upon the ground upon which it was placed. The plaintiff's demand having been made upon the executor upon his appointment as special administrator and having been complied with because of his knowledge of its existence and justice, there is no basis for the contention that there should have been a further presentation of the claim. Nor could the administrator, with knowledge of the existence of this demand against the estate, defeat it by a distribution of the estate in his hands. Indeed, the conduct of the parties for eight years thereafter shows that what is spoken of as the distribution of 1891 was regarded by the parties as subject to the demand of the plaintiff to be discharged by the administrator.

*Judgment of the circuit court reversed and that of the common pleas affirmed.*