BILLOW, APPELLEE, *v.* BILLOW, EXRX., APPELLANT.

(No. 4367—Decided October 28, 1953.)

*Messrs. Wise, Roetzel, Maxon, Kelly & Andress,* for appellee.
*Messrs: Brouse, McDowell, May, Bierce & Wortman,* for appellant.

HUNSICKER, J. This is an appeal on questions of law.

Archie L. Billow, now deceased, and Minnie A. Billow, the plaintiff below, appellee here, were husband and wife. On May 12, 1942, Minnie A. Billow was granted a divorce from Archie L. Billow. The trial court accepted and approved a separation agreement which the parties signed on March 17, 1942, prior to the judgment of divorce.

In the separation agreement which the parties signed, Archie L. Billow promised to pay to Minnie A. Billow, $150 each month thereafter "until death or remarriage * * *."

Archie L. Billow, on August 8, 1943, married Anita M. Billow, who, as executrix, was the defendant below and is the appellant here. Minnie A. Billow has not remarried.

The deceased, Archie L. Billow, made all of the payments as they became due, until the date of his death in August, 1951. Anita M. Billow was thereafter appointed the executrix of the last will and testament

of Archie L. Billow. Minnie A. Billow filed a claim with the executrix for the sum of $750, representing payments for September, 1951, through January, 1952, and also for the allowance of a claim for monthly payments of $150 each, commencing February 8, 1952, and continuing during her lifetime. The executrix rejected this claim. Minnie A. Billow then filed in the Court of Common Pleas of Summit County, Ohio, an action seeking a money judgment against the defendant-executrix for $750, and for ''an adjudication and decree that plaintiff is a creditor of the estate of said Archie L. Billow, deceased, and that her said claim is a valid and continuing claim against said estate and a charge against all of the assets of said estate which are available for the payment of the claims of creditors * * *, and for an order directing the defendant to allow said claim as a valid and continuing claim against the estate of said Archie L. Billow, deceased, and to pay same as decreed by the court.''

By agreement of counsel and the parties, the cause was tried to the court without a jury. The trial court found in favor of the plaintiff, and a judgment was entered which determined that Minnie A. Billow ''is entitled to recover from the estate of said Archie L. Billow and the defendant, Anita M. Billow as executrix * * *, the sum of $750,'' and ''is entitled to a judgment declaring that the estate of said Archie L. Billow and the defendant, Anita M. Billow, executrix * * *, are indebted to the plaintiff, Minnie A. Billow, in the sum of $150 each month commencing with the month of February, 1952, and continuing each month thereafter until the death or remarriage'' of Minnie A. Billow.

An appeal from such judgment comes before this court for review. The decisive question which this court must determine is: Did the ''separation agreement,'' entered into by Archie L. Billow and Minnie

A. Billow on March 17, 1942, in legal effect bind the estate of Archie L. Billow to make a payment of $150 each and every month to Minnie A. Billow, until her death or remarriage?

We are not dealing here with alimony or support payable in installments which has been decreed by a court in a divorce action. If such were the case, it is clear that, under the law of Ohio, the estate of a husband is not liable for installment payments of either alimony or support for the period after the death of the husband, unless the parties have so agreed and the agreement is approved by the court and is incorporated in the decree. *Platt* v. *Davies, Admr.,* 82 Ohio App., 182, 77 N. E. (2d), 486.

The above paragraph states the law as determined by the Supreme Court of Ohio in the following cases: *Lockwood* v. *Krum, Admr.,* 34 Ohio St., 1; *Graff, Exrx.,* v. *Graff,* 99 Ohio St., 448, 125 N. E., 72; *Snouffer* v. *Snouffer,* 132 Ohio St., 617, 9 N. E. (2d), 621.

The law of Ohio with respect to a continuing obligation of support based upon contract between the parties, has been stated in the case of *Hassaurek* v. *Markbreit, Admr.,* 68 Ohio St., 554, at p. 580, 67 N. E., 1066, as follows:

"It must now be regarded as settled beyond controversy that when, in an action for divorce, the court 's satisfied from the evidence that the marriage relations should be annulled the parties are competent to contract with respect to such changes in property rights as are to result from the severance of the former relation and their contract, if approved by the court, may be carried into its decree, thus becoming a perpetual obligation."

It is thus established that the parties to a separation agreement can lawfully *enter into a contract*, whereby the estate of the divorced husband, who dies prior to

the date of death of his divorced wife, is legally bound to make continuing payments of support, until the death or remarriage of the divorced wife. Such an agreement is not contrary to public policy, and the contract creates the obligation to pay after death. See: Annotations on this subject in 18 A. L. R., 1055; 100 A. L. R., 500; 101 A. L. R., 327.

We now look to the "separation agreement" of March 17, 1942, which contains the contract, and, within the four corners of that agreement, determine into what arrangement the parties entered. What they agreed to is in writing, and what is in writing is what they said to each other, and what they said to each other is what they intended their agreement to be, and what they intended their agreement to be, they had the trial court approve and enter as a part of the judgment of divorce.

The agreement provides, so far as material herein, that:

1. Archie L. Billow will pay to Minnie A. Billow "as support for herself, until death or remarriage, the sum of One Hundred and Fifty Dollars ($150.00) per month * * * starting March 15, 1942 * * *."

2. Archie L. Billow sells and assigns to Minnie A. Billow "all of the household furniture and effects, and other personal property, now located in and about" the residence of the parties.

3. The net proceeds of a sale of the homestead shall be divided equally.

4. Archie L. Billow "will save harmless" Minnie A. Billow "from any and all debts now" owed by either party.

5. Archie L. Billow will maintain insurance on his life and name Minnie A. Billow "irrevocably as beneficiary" thereof, "and agrees to make delivery of each of said policies" in escrow to the attorneys for Minnie

A. Billow "for the purpose of guaranteeing the performance of the premises herein made."

The agreement then states that:

"Now therefore, in consideration of the foregoing covenants and agreements, each party hereto does hereby release and discharge the other from all obligations of support, and from all other claims and duties arising or growing out of said marital relation; and said parties mutually agree that each party hereto may freely sell or otherwise dispose of his or her own property, by gift, deed or last will and testament, and each party is by these presents hereby barred from any and all rights or claims by way of dower, inheritance, descent, distribution, allowance for year's support, right to remain in the mansion house, and all rights or claims as widow, widower, heir, distributee, survivor or next of kin, and all other rights or claims whatsoever, in or to the estate of the other, whether real or personal, and whether now owned or hereafter to be acquired, which may, in any manner arise or accrue by virtue of said marriage.

"And each party hereto, for the considerations aforesaid, does hereby release and relinquish to the other, and to the heirs, executors, administrators and assigns of the other, all claims or rights of dower and inheritance, or as widow, widower, heir or survivor, in and to all the real property of the other, whether now owned or hereafter acquired, all rights or claims, as widow, widower, survivor, or next of kin, to a distributive share of the personal estate of the other, now owned or hereafter acquired, and all claim or right to an allowance for year's support, or to reside in the mansion house, and all other rights or claims whatsoever, which may, in any manner, arise or accrue by virtue of said marriage.

"And each party further agrees that the other party

shall have full liberty to dispose of all his or her property, real and personal, whether now owned or hereafter acquired, during life or by last will and testament, and that, upon the death of such party, all of his or her property, real and personal, which shall not have been disposed of, during life or by last will and testament, shall descend to, vest in and be distributed to, such person or persons as would be entitled to the same by the statutes of descent and distribution of the State of Ohio then in effect, had the surviving party died during the life of the other party.

"And each party hereby waives any right which he or she may have to administer the estate of the other party, upon the death of such other party.

"Each party hereto further agrees, upon request of the other, to execute and acknowledge any and all deeds or other instruments of release or conveyance to enable such other to sell, convey or otherwise dispose of his or her own real property, free from any apparent right of inchoate dower therein."

The regular monthly payment of $150 was paid until the date of the death of Archie L. Billow in August, 1951, and until at least the date of death the full and complete terms of the agreement were met.

It is a primary rule that a written contract should be construed in such manner as to give full effect to the intention of the parties, and such intention should be determined from the language used by giving to the words placed in the contract their ordinary and usual meaning. It is also axiomatic that the contract must be construed in its entirety and the intent gathered from a consideration of the whole agreement, rather than as separate paragraphs or sentences.

We are certain from a reading of this "separation agreement" that Archie L. Billow and Minnie A. Billow intended to settle once and for all time the finan-

cial and marital problems which existed between them. They each hoped that, by the arrangement which they entered into, all future difficulties so far as support, obligation for debt, and the acquisition and disposition of property, were fully and finally determined.

From an examination of the agreement, it is readily seen that the parties did not own much property. They had a modest home, as shown by the price at which it was sold, that was encumbered for nearly three-fourths of its value.

Debts were owed, which arose out of the marriage, such as the $900 in obligations contracted by Minnie A. Billow, and notes signed by Archie L. Billow or both parties. The insurance policies were in an amount that was modest when we consider the present claim of Minnie A. Billow. These insurance policies were encumbered by debts, and Minnie A. Billow, realizing that her estranged husband was not able to maintain the full $14,000 face amount of the policies in force, consented to a reduction in the amount of insurance Archie L. Billow was to carry.

This reduced amount of insurance, with the encumbrances removed by payments made by Archie L. Billow, was then placed in escrow (so that the escrow agent could check to see that the premiums were paid as they became due) with Minnie A. Billow as the irrevocable beneficiary.

We must ask: Why was Minnie A. Billow made the irrevocable beneficiary? The only logical answer is that it was for the purpose of giving her a measure of support after the death of the insured; for it appears certain that all Archie L. Billow had left to him was a settee, his personal clothes, one-half the equity from the sale of the house, and the income he might receive from his labor, which in turn was encumbered by the obligation to pay $150 each month as support, the ob-

ligation to pay premiums on life insurance, and the obligation to pay certain other debts.

The facts shown above, standing alone, would seem sufficient to establish the ultimate fact that the parties did not and never intended that the estate of Archie L. Billow should be bound to continue the payment of $150 each month to Minnie A. Billow after his death. In fact, he practically had no estate at the time of the agreement out of which payments could ever be made. The payments agreed upon could only be made out of personal earnings.

But, in addition, the agreement provides that "each party * * * shall have full liberty to dispose of all his * * * property * * * by last will and testament" as though "the surviving party died during the life of the other party." This does not say "except as such estate may be encumbered by the support payments." It does say that all the property of either party owned at the time the agreement was executed, and that which either afterward acquired, was to pass as such party directs and as though the other party was then dead.

This section of the agreement makes doubly certain that the parties never intended that the estate of Archie L. Billow was bound to continue the support payment beyond the death of Mr. Billow.

Therefore, in applying the legal principles set out above, we find no provision in the contract for support payments after death, and therefore under *Hassaurek* v. *Markbreit, Admr.,* 68 Ohio St., 554, 67 N. E., 1066, and other cases and texts cited above, there is no obligation for continued payments after death.

The judgment of the Common Pleas Court is reversed, and final judgment awarded the appellant-executrix herein.

*Judgment reversed.*

DOYLE, P. J., and STEVENS, J., concur.