**Rosemary Scott DESJARDINS, Plaintiff,**

v.

**Irene DESJARDINS, Individually and as Administratrix with the Will Annexed of the Estate of Gregory T. Desjardins, Deceased, Defendant.**

**No. 893.**

United States District Court
E. D. Kentucky,
Covington Division.
March 6, 1961.

Bullitt, Dawson & Tarrant, by M. Brooks Senn, Louisville, Ky., Ramson, Bogaty, Trainor & MacDonald, by Malcolm D. MacDonald, New York City, for plaintiff.

Ben Turpen, Cincinnati, Ohio, Ware & Ware, by William O. Ware, Covington, Ky., for defendant.

SWINFORD, District Judge.

Rosemary Scott Desjardins, the plaintiff and Gregory T. Desjardins, now deceased, were married in 1923 and lived together as husband and wife until 1944. The only issue born of this marriage was a son, John Scott Desjardins. In the early part of 1944 Mr. and Mrs. Desjardins separated and a decree of divorce was entered on June 20, 1944. As a part of the separation arrangement which culminated in the absolute divorce, the parties, on April 7, 1944, entered into a written agreement. This writing, called "Articles of Agreement", provides inter alia the following:

"1. The Wife shall undertake to sell the real estate located on Drake Road, Village of Indian Hill, Ohio, and shall be entitled to the entire net proceeds thereof after the payment of the mortgage lien thereon and after a payment in the amount of One Thousand Dollars ($1,000.00) to the Husband. * * *

"2. The Husband agrees to pay the sum of Two Hundred and Fifty Dollars ($250.00) per month to the Wife so long as the Wife shall live or until she remarries.

\* \* \* \* \* \*

"4. The Wife shall have and be entitled to the exclusive custody of the child, John Scott Desjardins. The Husband agrees to pay for the support, education and maintenance of the said John Scott Desjardins; until the said John Scott Desjardins attains the age of twenty-one (21) years, excepting that the Wife shall pay, out of the proceeds of the sale of the house as set forth in paragraph 1, the tuition for said John Scott Desjardins at St. John's College, where he is now enrolled for the balance of his undergraduate course at said college. Said tuition shall be paid in advance at the time said house is sold. In the event,

however, that any tuition is refundable or refunded the Wife shall be entitled to said refund.

\* \* \* \* \* \*

"6. The Husband agrees to maintain and keep in force Ten Thousand Dollars ($10,000.00) life insurance (with The Mutual Life Insurance Company of New York), in and to which the Wife is beneficiary to the amount of the full proceeds of said insurance. The Husband further agrees not to change the beneficial interest of the Wife in said insurance."

These "Articles of Agreement" were incorporated into and made a part of the decree of divorce.

On or about June 15, 1956, Gregory T. Desjardins died testate, a resident of Bracken County, Kentucky. At the time of his death he was married to the defendant, Irene Desjardins, who qualified as his administratrix with the will annexed of his estate, and appears here as defendant, both individually and in her trust capacity.

Under the terms of the will the only legatees or devisees of Mr. Desjardins' estate were his wife, Irene Desjardins, and his son, John Scott Desjardins.

The record shows that neither party to the "Articles of Agreement" performed its obligations. The plaintiff, Rosemary Scott Desjardins, sold the house and paid over to her former husband, Gregory T. Desjardins, the sum of $1,000, but did not pay her net receipts amounting to $4,884.14 from the sale of the house to St. John's College for the education of her son as required by the fourth paragraph of the agreement. Instead she used it for her own living expenses. Gregory did not make the monthly payments of $250 to Rosemary as required by paragraph 2. It was because of this failure to make the monthly payments that Rosemary used the funds received from the house for living expenses, which she says she was compelled to do.

After the separation and divorce, Rosemary moved to New York where she has

continued to live. The parties communicated from time to time and there was apparently a reasonably friendly relation between them although Gregory repeatedly failed to send to his former wife the alimony payments set forth in the decree. From the time of the decree until the time of his death, he paid to her as alimony the sum of $6,867.

The record presents for determination the following questions: (1) Is the judgment of the Ohio court entitled to full faith and credit in an action in this district or must the relief be sought in the court which entered the decree of divorce? In other words, is the decree such a final judgment as may be used as a basis for this action? (2) Is recovery barred or limited on the principle of abandonment of contract or breach of the obligations of the decree by the plaintiff? (3) Is the estate of Gregory T. Desjardins bound for the monthly alimony payments which accrued and will continue to accrue after decedent's death and during the life of the plaintiff? (4) Is the decedent's estate liable to the extent of the ten thousand dollars life insurance policy referred to in the decree and which the plaintiff claims was never purchased?

■ The divorce was granted and the decree entered by an Ohio court and the issues presented must therefore be determined by the law of Ohio.

■ The court is of the opinion that full faith and credit must be accorded the Ohio decree. Past due installments for future alimony under a judgment rendered in one state are within the protection of the full faith and credit clause of the Federal Constitution (Art. 4, § 1) unless it appears from the decree that the court rendering it had the discretionary right to modify it and provided that no modification of the decree had been made prior to the maturity of the installments. Sistare v. Sistare, 218 U.S. 1, 30 S.Ct. 682, 54 L.Ed. 905. If, however, under the law of the state where the judgment is rendered, no vested right attaches to future alimony and such payments are still left in the discretion of the court, the general rule does not apply.

■ The Ohio courts regard the term "alimony" as synonymous with a division of the property belonging to the parties at the time of separation and hold that decrees approving such agreements are not subject to modification. Newman v. Newman, 1954, 161 Ohio St. 247, 118 N.E.2d 649; Mozden v. Mozden, 1954, 162 Ohio St. 169, 122 N.E.2d 295; Watt v. Watt, 1942, 69 Ohio App. 322, 43 N.E. 2d 633.

In the light of these Ohio cases, I must conclude that the judgment under consideration falls within the general rule of Sistare v. Sistare, supra, and this court must accord to the divorce decree full faith and credit.

■ It is next contended by the defendant that recovery must be denied on the principle that nonperformance by the plaintiff in her failure to properly account for the net proceeds of the house, as the agreement directed, excused the decedent from performing his part of the contract and the parties abandoned their respective rights under the contract by common consent. The argument on this point might have merit if this were an action on a contract. It is more than that. It is an action on a decree which incorporates the contract between the parties. The agreement was superceded by the decree and the remedies for a breach of the obligations thereof will not be determined by the law of contracts. Holloway v. Holloway, 130 Ohio St. 214, 198 N.E. 579, 154 A.L.R. 439.

■ The decedent had an obligation to meet the monthly installments during his lifetime by reason of his independent agreement with the plaintiff, which, with his collaboration and consent, became a part of the judgment on which this action is based. The plaintiff is entitled to recover for monthly installments from the time of the decree, subject to any credits to which the defendant may be entitled.

■■ This brings us to a discussion of the plaintiff's contention, designated as

No. 3 above, wherein claim is made that alimony continues after the death of Gregory T. Desjardins. Accrued and unpaid alimony may be recovered from the estate of the obligor after his death. Annotation 18 A.L.R. 1040, 1054, supplemented by annotation 39 A.L.R.2d 1406, 1418. Generally, however, the obligation to pay alimony terminates on death. Annotation 39 A.L.R.2d 1406, 1410 (1955). Notwithstanding the general rule, the parties may validly contract for payments in alimony to extend beyond death and to continue until the death of the recipient. When such a contract is incorporated or contemplated in the divorce decree, it will be enforced by the courts. Annotations 18 A.L.R. 1040, 1055, and 39 A.L.R.2d 1406, 1414. The law of Ohio seems to be in accord with these principles. Hassaurek v. Markbreit, 68 Ohio St. 554, 67 N.E. 1066.

■ The courts of that state and apparently all other courts are understandably reluctant to enforce such an obligation on a decedent's estate unless it can be clearly shown that there was a meeting of the minds of the parties. The evidence must be so clear as to leave no doubt in the mind of the court as to the obligor's intention to bind his estate for continued payments after his death. In determining what the parties had in mind, it is proper and necessary to take into consideration the facts and circumstances surrounding the separation and property settlement. Conceivably, a very wealthy person might desire or by proper inducement agree to bind his estate for such a social obligation. Where the parties were, as in this case, apparently dependent upon the earnings of the husband for their livelihood and where there is no evidence of an estate sufficient to produce an independent income, it would seem contrary to all reason and equity to hold that the decedent intended to enter into such an arrangement as the plaintiff here contends. It is evident that throughout their married life, or at least the last few years, the plaintiff knew that her husband was not a wealthy man. This is emphasized by the fact that the home in which they lived was mortgaged for about four-fifths of its value. Another circumstance is the fact that there was a provision made for the husband to take out a $10,000 life insurance policy which would strongly imply that the life insurance money was to replace or furnish sustenance for the plaintiff when the earning power of her former husband came to an end by his death.

In contending that the obligation to pay the monthly installments continued after the death of her husband, the plaintiff places her principal reliance on the case of Billow v. Billow, 1953, 97 Ohio App. 277, 125 N.E.2d 558, 561. In that case the agreement provided that the husband should pay to the wife " * * * as support for herself, until death or remarriage, the sum of One Hundred Fifty Dollars ($150.00) per month * * *". There the court pointed out that a written contract must be construed in its entirety and the intention of the parties gathered from a consideration of the whole agreement rather than the separate sections or paragraphs thereof. In applying this rule of construction to the agreement then before it, the court found that the parties intended thereby to " * * * settle once and for all time the financial and marital problems which existed between them * * *", and that they never intended that the estate of the husband should be bound to continue the payments after his death.

This court can find no real distinction between the Billow case and the case at bar. The language with respect to the monthly payments is practically the same in both agreements, and the circumstances of the parties were very similar. It seems clear that the parties to the agreement here under consideration intended to settle for all time their financial and marital problems. In addition to the things I have pointed out, the agreement went so far as to provide for the pre-payment of the school tuition of the parties' son. This view of the case is reinforced by the language of the opin-

ions in Snouffer v. Snouffer, 132 Ohio St. 617, 9 N.E.2d 621 (reaffirmed in Hunt v. Hunt, 1959, 169 Ohio St. 276, 159 N.E.2d 430), and Platt v. Davies, 82 Ohio App. 182, 77 N.E.2d 486, although neither case is exactly in point.

Accordingly, the prayer of the complaint *should be denied* insofar as it seeks to recover the monthly installments allegedly accruing since the death of the decedent.

The question of the defendant's liability in connection with the alleged insurance policy remains to be decided.

■ The plaintiff contends that the decedent, by the terms of the agreement and decree, was obligated to maintain and keep in force an insurance policy in the amount of $10,000 on his life, the proceeds thereof to be irrevocably payable to the plaintiff, and that in default of such obligation his estate is indebted to the plaintiff in such sum.

■ The defendant insists that the plaintiff has failed to prove that the decedent breached this decretal obligation. Her point is well taken. This part of the plaintiff's claim differs from her claim for the monthly support payments in one particular—that of where lies the burden of proof. The burden of proving the allegations of a pleading is upon the party making the allegations. Thus, the burden of proving payment of an established personal obligation is on the defendant because the relative accessibility of proof requires that payment be affirmatively pleaded in defense. But the defendant needed only to deny the plaintiff's allegation of decedent's breach of obligation in connection with the insurance policy in order to place the question of such breach in issue. The issue having been raised by the plaintiff's allegations, she had the burden of proving the breach. This she clearly failed to do. Accordingly, the defendant is entitled to judgment as to this part of the plaintiff's claim.

■ In determining the credits to which the defendant is entitled, a ques-

tion in the refinement of pleading arises. Strictly speaking, the defendant's proper remedy was to plead by way of counterclaim the sum allegedly due the estate of the decedent by reason of any failure of the plaintiff to perform her obligations under the decree. Rule 13, Federal Rules of Civil Procedure, 28 U.S.C.A.

However, the defendant has elected (as she properly may) to plead the plaintiff's obligations only as matters in defense against the plaintiff's claim. Equity dictates that the court treat the defense as one of recoupment which, while not in the nature of an affirmative claim for judgment and not justifying such a judgment, may be interposed in diminution of a plaintiff's claim in a case such as this. See Restatement, Judgments, pp. 217, 238 (1942); Bull v. United States, 1935, 295 U.S. 247, 55 S.Ct. 695, 79 L.Ed. 1421; City of Grand Rapids, Mich. v. McCurdy, 6 Cir., 1943, 136 F.2d 615, 619; United States Plywood Corp. v. Hudson Lumber Co., D.C.S.D.N.Y. 1955, 17 F.R.D. 258; Jefferson, Noyes & Brown v. Western Nat. Bank, 1911, 144 Ky. 62, 138 S.W. 308.

The plaintiff proved payment of the $1,000 to the decedent, but she admits that she did not pre-pay the tuition of the parties' son and that, in fact, the decedent paid such tuition. Her recovery, then, must be reduced by such sum as was committed by the agreement and decree to the discharge of this obligation, i. e. the net proceeds from the sale of the real estate referred to in paragraph 1 of the agreement (after the payment of the said $1,000), or the sum of $4,884.14.

On the basis of the foregoing, the court holds that the defendant is liable to the plaintiff for the total of all periodic installments due under the decree for the period from June 20, 1944, to June 15, 1956, at the rate of $250 per month, or a total of $36,000, less a credit for payments pleaded and proved in the sum of $6,867 and a credit of $4,884.14, which sum plaintiff was obligated to pre-pay as tuition for the parties' son

and failed to do, leaving a total liability for accrued and unpaid installments of $24,248.86.

The court is of the opinion that no interest should be allowed on any of the monthly payments nor on the fund intended for the son's tuition at St. John's College, which was kept and used by the plaintiff. The evidence in this case was confined to the testimony of the plaintiff and her statements as to when payments by way of alimony were made were so vague, uncertain and indefinite, that the court feels, in the light of all the circumstances set forth by the record, that equity demands that no interest be allowed to either party.

A judgment in conformity with this memorandum is this day entered.

Sufficient findings of fact and conclusions of law appear in this memorandum and will not be filed separately. Rule 52(a), Federal Rules of Civil Procedure.