Rosemary Scott DESJARDINS, Plaintiff-Appellee,

v.

Irene DESJARDINS, Individually, and as Administratrix, with Will annexed, of the Estate of Gregory T. Desjardins, deceased, Defendant-Appellant.

Rosemary Scott DESJARDINS, Plaintiff-Cross Appellant,

v.

Irene DESJARDINS, Individually, and as Administratrix, with Will annexed, of the Estate of Gregory T. Desjardins, deceased, Defendant-Cross Appellee.

Nos. 14582, 14583.

United States Court of Appeals
Sixth Circuit.

Sept. 26, 1962.

---

Shackelford Miller, Jr., Chief Judge, dissented in part.

M. Brooks Senn, Louisville, Ky. (Murray Ramson, New York City, on the brief; Bullitt, Dawson & Tarrant, Louisville, Ky., Ramson, Bogaty, Trainor & MacDonald, New York City, of counsel), for Rosemary Scott Desjardins.

Ben Turpen, Cincinnati, Ohio (William O. Ware, Covington, Ky., on the brief), for Irene Desjardins.

Before MILLER, Chief Judge, O'SULLIVAN, Circuit Judge, and BOYD, District Judge.

O'SULLIVAN, Circuit Judge.

In this case, plaintiff-appellee and cross-appellant, Rosemary Scott Desjardins (herein called Rosemary) obtained a judgment of $24,248.86 against defendant-appellant and cross-appellee, Irene Desjardins (herein called Irene), individually, and as administratrix of the Estate of Gregory Desjardins (herein called Gregory). Rosemary was the divorced wife of Gregory; Irene, his widow, was his second wife. The judgment was the amount that the District Judge found was owing, on the date of the death of Gregory, to Rosemary for monthly payments that Gregory was to have paid to her in accordance with the terms of a separation agreement which had been confirmed by the decree by which Rosemary and Gregory were divorced. The District Judge held that Gregory's estate was not liable for any monthly payments ($250.00 per month) after his death, and disallowed Rosemary's claim therefor. He also refused to award plaintiff the sum of $10,000.00 which she claims was due on account of Gregory's alleged failure to maintain a life insurance policy in that amount payable to Rosemary, as required by the separation agreement. Both parties appeal. This is a diversity case, tried to the Court without a jury. The District Judge's opinion is reported as Desjardins v. Desjardins, D.C., 193 F.Supp. 210.

Gregory and Rosemary were married in 1923. They had a son, John. On April 7, 1944, they executed a separation agreement, the following portions of which are pertinent here:

"1. The Wife shall undertake to sell the real estate located on Drake Road, Village of Indian Hill, Ohio, and shall be entitled to the entire net proceeds thereof after the payment of the mortgage lien thereon and after the payment in the amount of One Thousand Dollars ($1,000.00) to the Husband.

\* \* \* \* \* \*

"2. The Husband agrees to pay the sum of Two Hundred and Fifty Dollars ($250.00) per month to the Wife so long as the Wife shall live or until she remarries.

\* \* \* \* \* \*

"4. The Wife shall have and be entitled to the exclusive custody of the child, John Scott Desjardins. The Husband agrees to pay for the support, education and maintenance of the said John Scott Desjardins, until the said John Scott Desjardins attains the age of twenty-one (21) years, excepting that the Wife shall pay out of the proceeds of the sale of the house as set forth in paragraph 1, the tuition for said John Scott Desjardins at St. John's College, where he is now enrolled for the balance of his undergraduate course at said college. Said tuition shall be paid in advance at the time said house is sold. In the event, however, that any tuition is refundable or refunded the Wife shall be entitled to said refund.

\* \* \* \* \* \*

"6. The Husband agrees to maintain and keep in force Ten Thousand Dollars ($10,000.00) life insurance (with the Mutual Life Insurance Company of New York), in and to which the Wife is beneficiary to the amount of the full proceeds of said insurance. The Husband further agrees not to change the beneficial interest of the Wife in said insurance.

\* \* \* \* \* \*

"9. The parties agree, each complying with the terms of this agreement in all respects, to hold and save harmless each other from any claims, liabilities or judgments of any kind or description, by way of alimony, dower, inheritance or otherwise."

A decree of divorce, incorporating this agreement, was granted June 20, 1944, by the Common Pleas Court of Hamilton County, Ohio. Gregory later married Irene, with whom he lived until his death in 1956.

The complaint avers that between the date of the divorce and December 31, 1952, a total of $6,867.00 was paid to Rosemary by Gregory as monthly support; that nothing was paid to her thereafter, either by Gregory or his estate; and that Gregory had not provided the $10,000.00 life insurance policy called for by the separation agreement. The total sum payable as monthly support payments from the divorce decree, June 20, 1944, to the date of Gregory's death, June 15, 1956, was $36,000.00. The sum of $6,867.00 was admittedly paid on this total obligation.

Defendant's answer admitted that no payments had been made since Gregory's death, admitted the sum already paid, $6,867.00, but denied that any more money was owing. As a special defense, defendant asserted that the separation agreement contained mutual covenants, one of which plaintiff had breached by not using the net balance received by her from the proceeds of the sale of the real estate to pay for her son's tuition, and that such breach was a complete defense to the action. The defendant further pleaded that the divorce decree of the Hamilton, Ohio, Common Pleas Court had not been reduced to a lump sum and consequently was not a final judgment entitled, in this suit in Kentucky, to full faith and credit.

The plaintiff, Rosemary Desjardins, was the only witness at the trial. Her testimony, together with the divorce decree entered in the Hamilton County, Ohio, Court of Common Pleas (with the separation agreement attached as a part thereof) made up plaintiff's proofs. Defendant offered none. Admissions by the

pleadings, and otherwise, provide the additional facts recited herein. Plaintiff testified that she had remained unmarried after her divorce and that the only money she received from Gregory was $6,867.00. She stated that she had, as required by the separation agreement, paid $1,000.00 of the proceeds of the sale of the house to Gregory and had used the balance, "about $3,000.00," for living expenses, instead of paying it on the son's tuition at college as she had agreed. Her asserted reason for so doing was that, not receiving her support payments regularly, she needed the funds to live. She said she had not pressed Gregory for support payments, but from time to time called his attention to his obligations in this respect. She admitted that Gregory had paid his son's tuition for the remaining three years at St. John's College. From disclosures on cross-examination of plaintiff, the District Judge concluded that she had received $5,884.14 from the sale of the real estate and that after paying $1,000.00 to Gregory, the balance of $4,884.14 should have been paid on the son's tuition. Plaintiff testified that she had not received any money as proceeds of a life insurance policy on Gregory's life.

The District Judge gave judgment for plaintiff in the amount of $24,248.86. That sum was reached by subtracting from the total money due as monthly support payments from the date of divorce until the date of Gregory's death, ($36,000.00), the amount admittedly paid, ($6,867.00), and the amount which plaintiff should have paid as tuition for her son's education ($4,884.14). No recovery was given for the amount claimed due after Gregory's death, nor was any given for the $10,000.00 which plaintiff says she should have received as insurance on the life of Gregory.

The appeal and cross-appeal before us present four questions: First, was there competent evidence to sustain the judgment for plaintiff; Second, did monthly payments to Rosemary continue to accrue as obligations of his estate after the death of Gregory; Third, did plaintiff prove a breach by Gregory of his promise to maintain a $10,000.00 life insurance policy for the benefit of Rosemary; and, Fourth, should the judgment have run against the widow, Irene Desjardins, personally.

*1) Was there competent evidence to support the judgment for plaintiff?*

■■ Only one point was made by defendant, Irene, in this regard. Relying upon the Kentucky "dead man's" statute, K.R.S. § 421.210(2),[1] she contends that it was reversible error to permit Rosemary to testify to the transactions here involved, and that absent such testimony, the decision of the District Court cannot stand. Plaintiff was allowed, over the defendant's objection, to testify as to the amounts that the deceased, Gregory, had paid to her prior to his death. Since there is no rule in the federal court system allowing such testimony, we would be bound to follow this Kentucky procedural statute if it were applicable to the facts here presented. Rule 43(a), F.R. Civ.P., 28 U.S.C.A. See, Mutual Life Ins. Co. v. Green, 37 F.Supp. 949, 951 (W.D.Ky.1941). A fair reading of the District Judge's opinion, however, indicates that he did not rely on such allegedly incompetent testimony for his decision, but rather upon the evidence supplied by the divorce decree, itself. The suit is based upon such decree. That being so, the decree, if it is final, is entitled to full faith and credit. U.S.Const. Art. IV, Sec. 1.[2] Since the decree was rendered in Ohio, it is to the law of that

1. "* * * no person shall testify for himself concerning any verbal statement of, or any transaction with, or any act done * * * by * * * one who is * * * dead when the testimony is offered to be given * * *."

2. "Full Faith and Credit shall be given in each State to the public Acts, Records, and Judicial Proceedings of every other State."

state to which we look to see if it is final.

 Under Ohio law, a decree of a court of competent jurisdiction approving or adopting a separation agreement which fixes the property rights of the parties to a marriage and which provides for the support of the wife is not subject to modification by that court in the absence of mistake, fraud or misrepresentation. Law v. Law, 64 Ohio St. 369, 60 N.E. 560; Newman v. Newman, 161 Ohio St. 247, 118 N.E.2d 649; Mozden v. Mozden, 162 Ohio St. 169, 122 N.E.2d 295. The decree before us is not attacked on any of those grounds. It is, under Ohio law, a final judgment. It, therefore, is entitled to full faith and credit by the courts of other states. A federal court is bound to give such judgment the same force and effect as would a court of the state in which the federal court is sitting. Sutton v. Leib, 342 U.S. 402, 409, 72 S.Ct. 398, 402, 96 L.Ed. 448, 456; Union & Planters Bank of Memphis v. Memphis, 189 U.S. 71, 75, 23 S.Ct. 604, 606, 47 L.Ed. 712, 715.

The fact that the decree is one for monthly installments rather than for a lump sum is of no consequence here. Under the rule of Sistare v. Sistare, 218 U.S. 1, 16, 17, 30 S.Ct. 682, 686, 54 L.Ed. 905, 910, 911, full faith and credit must be given to a divorce decree which provides for installment payments to the wife if the installments have accrued and if the decree is not subject to modification. See also, Barber v. Barber, 323 U.S. 77, 65 S.Ct. 137, 89 L.Ed. 82; Smith v. Smith, 217 F.2d 917, 919 (C.A.6, 1954); Annotation, 157 A.L.R. 170.

 Under Kentucky practice, as well as that in federal courts, payment is an affirmative defense to be pleaded by the one resisting the claim. Kentucky Rules of Civ.P., Rule 8.03; F.R.Civ.P. Rule 8(c); Federal Deposit Ins. Corp. v. Siraco, 174 F.2d 360, 362 (C.A.2, 1949).

In Massie's Ex'x v. Massie's Ex'x, 288 Ky. 370, at 371, 156 S.W.2d 195, at 196, it was said:

"We have held many times that when the execution of an obligation is admitted and payment thereof pleaded, the burden of proof is on the defendant."

See also, Goode, Executor v. Reynolds, Executor, 208 Ky. 441, 449, 271 S.W. 600, 63 A.L.R. 631. Here, defendant admits the existence of the decree incorporating in it provisions for monthly payments to the wife. Rule 8.03, K.R. Civ.P., places upon the defendant the duty of affirmatively pleading payment. Further, under Kentucky law, the burden of proving any affirmative defense is on the one asserting the defense. Whitteker, Admr. v. Holcomb, 177 Ky. 790, 793, 198 S.W. 533; Jenkins v. Jenkins, 19 Ky. 327, 329. Thus the burden of proving payment is on defendant.[3] This burden is not shifted merely by failing to plead the affirmative defense, though failure to so plead may in fact deprive a defendant of that defense. See, American Oil Pump & Tank Co. v. Sizemore, 210 Ky. 690, 693, 694, 276 S.W. 558.

 Defendant asserts, however, that this rule as to the burden of proof of payment is not applicable here because the suit is not founded upon a debt for an unconditional and definite sum of money. We cannot agree. Kentucky early recognized that a money judgment is in the nature of a debt. Dudley v. Lindsey, 48 Ky. 486, 489. And, as we have seen, it is inconsequential that the suit is based on installments due rather than a lump sum. Sistare v. Sistare, 218 U.S. 1, 30 S.Ct. 682, 54 L.Ed. 905. See also, Armstrong v. Armstrong, 117 Ohio St. 558, 160 N.E. 34, 57 A.L.R. 1108; McPherson v. McPherson, 153 Ohio St. 82, 90 N.E.2d 675. The amount claimed here for past due monthly support payments is no less definite or

---

3. Where federal jurisdiction is based upon diversity of citizenship, the question of burden of proof is governed by state law. Palmer v. Hoffman, 318 U.S. 109, 117, 63 S.Ct. 477, 482, 87 L.Ed. 645, 651; Cities Service Oil Co. v. Dunlap, 308 U.S. 208, 60 S.Ct. 201, 202, 84 L.Ed. 196, 197, 198.

certain than a lump sum merely because a simple calculation is required to arrive at it. See, Caudill Coal Co. v. Charles Rosenheim & Co., 201 Ky. 758, 760, 258 S.W. 315. We conclude, therefore, that plaintiff established a *prima facie* case by introducing in evidence a copy of the Ohio divorce decree. See Smith v. Hill, 232 Mass. 188, 122 N.E. 310, 2 A.L.R. 1667, 1669, affirmed, 260 U.S. 592, 43 S.Ct. 219, 67 L.Ed. 419. Since it was incumbent upon defendant to plead and prove payment, the fact that Rosemary testified that certain payments were made to her could not be said to work to defendant's prejudice. At most, it relieved defendant of part of her burden. It should be noted in passing that the Kentucky "dead man's" statute, K.R.S. § 421.210(2), while rendering certain testimony incompetent, does not necessarily make the introduction of such testimony reversible error. See Grigsby v. Smith, 174 Ky. 819, 827, 192 S.W. 856; Evans v. Payne, 258 S.W.2d 919, 922 (Ky.1953). We cannot say that the substantial rights of defendant were prejudiced by Rosemary's testimony here. Rule 61, F.R. Civ.P.

 Defendant asserts further that because the separation agreement imposed certain obligations on Rosemary as well as on Gregory, the decree sued upon is not a final one. No authority has been cited to us in support of this proposition nor do we find any. The provisions of the agreement dealing with the monthly payments of money merged into the decree of the Ohio court and have no legal life apart from the decree. See, Restatement of the Law of Judgments, Section 45(a), Comment a; Ibid, Section 47(b), Comment g, Illustration 9. Insofar as parts of the agreement order the doing of any act other than the payment of money, however, those parts are still viable and subject to the same treatment as any other contract. See, Restatement of the Law of Judgments, Section 46; Buswell v. Buswell, 377 Pa. 487, 105 A.2d 608, 44 A.L.R.2d 1085.

There having been no proof of payment on account of the amount owing on the decree other than the admitted amount of $6,867.00 and the amount that the District Judge deducted for the son's tuition, it was proper for him to enter judgment for the unpaid balance.

2) *Did liability for monthly payments continue to accrue after death of the husband, Gregory?*

 The general rule is that the obligation for alimony payments, in the absence of an agreement to the contrary, does not survive the death of the obligor. Ohio law recognizes that the parties to a divorce may contract for alimony payments which extend beyond the death of the obligor. Hassaurek v. Markbreit, 68 Ohio St. 554, 67 N.E. 1066. Whether or not such payments are intended to continue after the death of the obligor in any case must be determined by application of the rule of contract interpretation that the intention of the parties is to be gleaned from the entire contract read as a whole. Billow v. Billow, 97 Ohio App. 277, 283, 125 N.E.2d 558.

 Plaintiff contends that because Part 2 of the agreement provides for monthly payments, " * * * so long as the Wife shall live or until she remarries * * *," the parties intended the payments to survive the death of Gregory. The District Judge rejected this argument on the authority of Billow v. Billow, 97 Ohio App. 277, 125 N.E.2d 558. We agree with his conclusion in this regard and adopt the following portion of his opinion:

"In determining what the parties had in mind, it is proper and necessary to take into consideration the facts and circumstances surrounding the separation and property settlement. * * * It is evident that throughout their married life, or at least the last few years, the plaintiff knew her husband was not a wealthy man. This is emphasized by the fact that the home in which they lived was mortgaged for about four-

fifths of its value. Another circumstance is the fact that there was a provision made for the husband to take out a $10,000 life insurance policy which would strongly imply that the life insurance money was to replace or furnish sustenance for the plaintiff when the earning power of her former husband came to an end by his death." 193 F.Supp. 210, 214.

In Billow v. Billow, supra, the Ohio Court of Appeals placed a like construction upon a separation agreement very similar to the one before us. That court held that the purpose of the clause providing for life insurance was to provide for the support of the wife after the death of the husband, and that would indicate an intent not to bind the estate of the husband for support payments after his death. In Taylor v. Gowetz, 339 Mass. 294, 158 N.E.2d 677, 75 A.L.R. 2d 1079 (1959), the court placed the opposite construction on the purpose of such a life insurance clause. There it was held that the insurance was in addition to the monthly support payments. Because of the short and incomplete digest of the provisions of the separation agreement in Taylor v. Gowetz, supra, we cannot say that such agreement is distinguishable from the one before us or the one in Billow v. Billow, supra. It is sufficient to say that if the holding in Taylor v. Gowetz, supra, is contrary to that in Billow v. Billow, supra, we are bound to follow the Ohio decision in determining the construction to be placed upon an Ohio contract.

**3) Breach of agreement to maintain life insurance.**

 The District Judge held that plaintiff failed to meet her burden of proving that Gregory failed to maintain $10,000.00 of life insurance on his life for her benefit. As we have noted previously, the parts of the separation agreement which order the doing of any act other than the payment of money did not merge into the judgment of the Ohio court. Consequently, Rosemary's action for specific enforcement, or for damages for the breach of the clause requiring Gregory to obtain life insurance for her benefit, is like any other action on a contract; the plaintiff is required to establish the breach thereof. The sole testimony on this point was Rosemary's statement that she had not received any life insurance proceeds and that she knew of no policy on Gregory's life for her benefit. It can be argued that Rosemary's testimony that she had not received the proceeds of any life insurance policy would justify a factual inference that Gregory had failed to maintain such policy. Evidently, however, the District Judge, as trier of the facts, declined to draw such an inference. His failure to do so was not, in our view, clearly erroneous. Clear proof on the point could have been readily provided by plaintiff. We cannot say that the District Judge's conclusion that Rosemary failed to sustain her burden of proof in this regard is clearly erroneous, either as a matter of fact or law.

**4) Was a personal judgment against Irene Desjardins justified?**

 This action was brought against Irene, individually, and as administratrix, with will annexed, of the estate of Gregory T. Desjardins. The judgment rendered in the District Court recites merely that " * * * the plaintiff recover from the defendant * * *." At common law, a judgment de bonis propriis against the executor or administrator of an estate was unwarranted in the absence of a devastavit. Smith v. Chapman, 93 U.S. 41, 43, 23 L.Ed. 795, 796; Lewis v. Parrish, 115 F. 285, 288 (C.A.2, 1902). Kentucky likewise follows the rule that in the absence of waste, fraud, or mismanagement of an estate the administrator or executor thereof is not personally liable for a claim against the estate. Dawson v. Clay's Heirs, 24 Ky. 165, 167. There is no claim in the case before us of waste, fraud or mismanagement on the part of

Irene. Accordingly, no part of the judgment rendered shall be enforced against her except in her representative capacity as administratrix, with will annexed, of the Estate of Gregory T. Desjardins.

The judgment of the District Court is otherwise affirmed.

SHACKELFORD MILLER, Jr., Chief Judge (dissenting in part).

I do not concur in that portion of the majority opinion which holds that the obligation of the husband to pay his wife, Rosemary, two hundred and fifty dollars per month "so long as the Wife shall live or until she remarries" terminated with the death of the husband, even though the wife outlived the husband and remained unmarried. The contract provision is clear and unambiguous; it needs no construction. It provides that the wife is to be paid the monthly payment so long as *she* shall live, not as long the husband shall live. She is still living. To terminate the payments at the death of the husband is directly contrary to the express words of the contract. Wides v. Wides, 300 Ky. 344, 351, 188 S.W.2d 471. The question of what limitation, if any, was to be placed upon the period over which the monthly payments were to be made was obviously not overlooked. The length of time over which the payments were to be made was carefully limited by an express provision in the contract to "until she remarries," yet no provision was made in that same sentence or elsewhere in the contract limiting the period to the life time of the husband. If the payments were to terminate upon the death of the husband, it could have been very easily so provided.

The continuance of such monthly payments *after* the death of the husband, under a very similar contract provision, was enforced by the Supreme Court of Ohio in Hassaurek v. Markbreit, Admr., 68 Ohio St. 554, 67 N.E. 1066. See also

Taylor v. Gowetz, 339 Mass. 294, 158 N.E.2d 677, 75 A.L.R.2d 1079; International Trust Co., Exec. v. Liebhardt, 111 Colo. 208, 139 P.2d 264, 147 A.L.R. 700; 75 A.L.R.2d 1091. Snouffer v. Snouffer, 132 Ohio St. 617, 9 N.E.2d 621, is not to the contrary, in that it involved an involuntary decree not based upon a *contract settlement between the parties,* which distinction was expressly referred to in the opinion wherein the Court in making its ruling said (p. 623, 9 N.E.2d 621), "in the absence of contract or statutory provision to the contrary."

The District Judge, in making his ruling, which the majority opinion approves, relied largely upon Billow v. Billow, 97 Ohio App. 277, 125 N.E.2d 558. That case, however, is not from the Supreme Court of Ohio and must yield to the ruling in Hassaurek v. Markbreit, Admr., supra, 68 Ohio St. 554, 67 N.E. 1066, if in conflict therewith.

There were provisions in the Billow case, which I think differentiate it from our present case. In the Billow case the settlement agreement placed insurance policies on the life of the husband in escrow and provided that they were "for the purpose of guaranteeing the performance of the premises (sic) herein made." The Court, in reaching its decision relied strongly upon those provisions of the agreement. Since the insurance matured upon the husband's death, those provisions indicated to the Court that the obligation which the insurance guaranteed likewise terminated upon the husband's death. Such provisions are not included in the settlement agreement in the present case.

In addition, the District Judge, in construing the property settlement in the present case, relied upon what he was advised was the fact that the contract provided that the husband was to "take out a $10,000 life insurance policy," which would imply that the life insurance money was to replace or furnish

sustenance for the wife when the earning power of her former husband came to an end by his death. Although the attorney for Rosemary stated to the Court that "To the best of our knowledge, they were not policies then in force," upon which statement the Court obviously relied, such statement was not evidence in the case and can not change the provisions of the property settlement. I do not construe the property settlement as referring to a new policy to be *taken out* by the husband. To me it clearly refers to a policy already in existence. It provides, "The Husband agrees to *maintain* and keep in force Ten Thousand Dollars ($10,000.00) life insurance (with The Mutual Life Insurance Company of New York), in and to which the Wife *is* beneficiary to the amount of the full proceeds of said insurance. The Husband further agrees not to *change* the beneficial interest of the Wife in said insurance." (Emphasis added.) The use of the word "maintain" instead of the words "take out," the reference to the specific life insurance company,* and the statement that the wife "is" the beneficiary instead of stating that she would be named as beneficiary, indicate to me that the policy was in existence at the time and was one of the existing assets which the property settlement allocated to the wife in its overall purpose of disposing of *all* the assets and liabilities involved in the separation and contemplated divorce. I do not believe we are justified in adopting an implied construction, which, as stated in Taylor v. Gowetz, supra, 339 Mass. 294, 158 N.E.2d 677, 75 A.L.R.2d 1079, is a strained one, and which nullifies the express, unambiguous obligation of the husband contained in a prior provision of the contract.

---

* The property settlement also provided that the husband "maintain and keep in force" $5,000.00 life insurance in two other specifically named companies, "(with The Equitable Life Insurance

Company of Iowa and Connecticut Mutual Life Insurance Company) in and to which the child of the parties, John Scott Desjardins *is* the beneficiary." (Emphasis added.)