WHITE, APPELLEE, *v.* WHITE, APPELLANT.

(No. 953—Decided April 18, 1975.)

*Murray & Murray Co., L. P. A.*, for appellee.
Messrs. *Tone, Maddrell, Eastman & Grubbe,* for appellants.

BROWN, P. J. This is an appeal by defendant Laurine L. White from a partial summary judgment in favor of plaintiff Ruth Marie White, the appellee, construing a written separation agreement incorporated into a 1962 divorce decree. In that divorce action, plaintiff was granted a divorce from William A. White, who died in 1973.

After the divorce in 1962, William White married the defendant. She is named as a defendant, individually, and as executrix of the estate of William White.

A threshold preliminary or procedural problem exists. Should this appeal from the partial summary judgment be dismissed for lack of a final, appealable order? Counsel of record for the parties do not contend it is not a reviewable order, and agree that the summary judgment of the trial court, for practical purposes, is substantially dispositive of all the issues raised by the pleadings. Further, both parties through counsel stipulated at the oral argu-

ment in this court that the judgment entered by the trial court granting partial summary judgment should be amended, *nunc pro tunc*, to add the phrase "no just cause for delay," as required by Civ. R. 54(B). It is so ordered. We will accordingly consider the partial summary judgment as a final reviewable order.

The provisions of the separation agreement between plaintiff and decedent, William White, which give rise to this controversy between plaintiff and the defendant are paragraphs 2, 6, and 7 of the 1962 agreement and a 1969 written modification, as follows:

"2. The Party of the First Part will make all contractual arrangements with the Cedars Rest Home of Sandusky, Ohio, for the care, maintenance and support of the Party of the Second Part, Ruth Marie White and pay for said care, maintenance and support *for as long as she lives*, it being understood and agreed that if for any reason she is unable to remain at the Cedars Rest Home or the Cedars Rest Home shall close the Party of the First Part is bound to place the Party of the Second Part in a home of like standing and services and for like cost. * * *

"6. It is further agreed by and between the parties; their *heirs, assigns and administrators* that the $10,000.00 hereinabove referred to shall be placed in a savings account and shall draw interest until same is there for six full years and beginning the seventh year the escrow agent is hereby authorized to use so much of said funds for the care, maintenance and support of the Party of the Second Part at the Cedars Rest Home or a like institution and in the event that the Party of the First Part shall have died in the meantime and there is no way that the Party of the Second Part can enforce payments for medical, dental or eye care, then the escrow agent is authorized to use whatever sum that is necessary, in addition to care and keep for the payment of said services.

"7. It is further agreed by and between the parties that if the Party of the Second Part should die anytime and any and all of the $10,000.00 is unused, the Party of the First Part shall provide for a respectable burial for the Party of the Second Part and the balance of the funds

shall go to the Party of the First Part and in the event the Party of the First Part has predeceased the Party of the Second Part then the balance of said funds shall go to June Armstrong, daughter of the parties."

Modified paragraph 7 provides:

"It is further agreed by and between the parties that if the Party of the Second Part should die any time and any and all of the $10,000.00 is unused, the Party of the First Part shall provide for a respectable burial for the Party of the Second Part and the balance of the funds shall go to the Party of the First Part, and in the event the Party of the First Part has predeceased the Party of the Second Part then the balance of said funds shall go to Laurine White, present wife of the Party of the First Part." (Emphasis ours.)

The trial court construed these written provisions so that the escrow fund of $10,000 created by paragraph 6 was subject to the continuing care of plaintiff "as long as she lives" as specified in paragraph 2, and that the estate of William White was obligated to pay "for said care, maintenance and support for as long as she lives" as was necessary for plaintiff as provided in paragraph 2, over and beyond the $10,000 escrow fund.

Defendant contends that upon the death of William White in 1973, the defendant, Laurine White, was entitled to the balance of the $10,000 escrow fund by virtue of the 1969 modified paragraph 7, particularly the last clause thereof which reads:

"* * * and in the event the Party of the First Part has predeceased the Party of the Second Part then the balance of said funds shall go to Laurine White, present wife of the Party of the First Part."

We disagree with defendant's contention and affirm the judgment of the lower court.

This is the legal issue to be decided. Did the decedent William White, by his written separation agreement, intend: (1) to obligate his $10,000 escrow fund created by paragraph 6 to provide care for plaintiff for as long as she lives, continuing after his death, and (2) to obligate his estate after his death for the care of plain-

tiff for as long as she lives after his death and after the escrow fund is exhausted? The answer is "yes."

The parties intended by this agreement to have the escrow fund and the estate of William White obligated for the care and support of plaintiff as long as she lives, extending beyond the death of William White.

In reaching this conclusion, we should consider, besides the provisions of the written agreement set forth above, the following preamble of the agreement, namely:

"Whereas, the Party of the First Part has filed a petition for divorce against the Party of the Second Part and whereas the parties believe it is no longer feasible for them to cohabit as husband and wife, and,

"Whereas the Party of the Second Part is in ill health and requires medical care and likewise is not in a position to do all the necessary work on the part of housekeeping, therefore the parties do for *themselves, their heirs and assigns* agree as follows * * *." (Emphasis ours.)*

A husband, by written separation agreement incident to a divorce, may contract to support his wife as long as she lives, and where the intent of the parties is clear and the wife survives her husband, such obligation to support the wife extends beyond the death of the husband and obligates his estate, and any fund intended to be so impressed, for the duration of her life. *Hassaurek* v. *Markbreit*, 68 Ohio St. 554.

Defendant argues that *Hassaurek* is not applicable.

---

*Harmonizing with the conclusion as to intent of the parties are paragraphs 4 and 5 of the 1962 written separation agreement as follows:

"4. In addition to providing for care, maintenance and support at the Cedars Rest Home at Sandusky, Ohio for the Party of the Second Part and Party of the First Part agrees to pay to the Clerk of Courts of Erie County, Ohio the sum of $40.00 per month for spending money, clothing and incidentals for the Party of the Second Part, which sum however is not to be used for medical, dental or care of the eyes.

"5. The Party of the First Part agrees to provide for all medical, dental and eye care of the Party of the Second Part in addition to the above stipulations."

We disagree. Defendant further argues that the rationale of the following cases apply. *DeMilo* v. *Watson*, 166 Ohio St. 433; *Snouffer* v. *Snouffer*, 132 Ohio St. 617; *Hunt* v. *Hunt*, 169 Ohio St. 276; *Billow* v. *Billow*, 97 Ohio App. 277; *Desjardins* v. *Desjardins*, 91 Ohio Law Abs. 111. We disagree. All these cited cases are factually distinguishable compelling the decisions reached in those cases.

Accordingly, the following two assignments of error are not well taken:

1. "The Court Erred In Its Construction of The Agreement Of January, 1962, Supplemented By The Agreement Of October, 1969, Between The Plaintiff And The Decedent As to The Disposition Of The Escrow Fund.

2. "In The Alternative, The Court Erred In Its Constructions Of The Agreement Of January, 1962 Between The Plaintiff And The Decedent, Supplemented By The Agreement Of October, 1969, As To The Charge Against The Estate."

Defendant urges a third assignment of error, as follows:

3. "The Court Erred In Not Assigning Plaintiff's Motion For Partial Summary Judgment For Hearing."

This third claimed error is not well taken and, if error, is non-prejudicial. The further evidence defendant urges in her brief that she desires to develop before a hearing date for summary judgment would not be a valid basis for changing the decision and judgment of the trial court. Further, counsel for the defendant had many months after the filing of the plaintiff's motion for summary judgment to file evidentiary matter opposing the motion. Defendant did nothing. Defendant further made no objection to the trial court before the rendition of the summary judgment concerning the absence of a hearing date, and acquiesced in the summary judgment procedure employed. Defendant raises a procedural objection too late.

*Judgment affirmed.*

WILEY and POTTER, JJ., concur.