Mary Lou LODDE, Plaintiff
and Appellee,

v.

Dean LODDE, Defendant and
Appellant.

In the Matter of the ESTATE OF Dean
W. LODDE, Deceased, Appellant.

Nos. 15803 and 15804.

Supreme Court of South Dakota.

Considered on Briefs Nov. 20, 1987.

Decided Feb. 24, 1988.

marriage. 'The trial court also awarded Mary attorney's fees of $538.97.

Both parties have also made requests for appellate attorneys' fees and costs.

Mary Lou Gubbrud of Pruitt, Matthew & Muilenberg, Sioux Falls, for plaintiff and appellee.

Gary B. Ward of Ward and Gering, Viborg, for defendant and appellant.

MILLER, Justice.

This opinion consolidates two appeals, one in a divorce action and one in a probate proceeding. In both cases below the co-executors appealed from orders that modified the decedent's alimony obligation to his former wife; the orders continued the alimony obligation but reduced it from $300 per month to $270. We affirm.

## PROCEDURAL HISTORY AND FACTS

Mary Lou Lodde and her husband Dean Lodde were divorced in 1976. Their settlement agreement, which the trial court incorporated into its divorce decree, provided, among other things, that Dean's alimony payment of $300 per month would continue following his death.[1]

Dean died on January 18, 1986. Because Mary Lou was not paid any alimony after Dean's death, she filed affidavits in both the divorce and probate proceeding requesting alimony payments. The co-executors of Dean's estate responded and requested that the divorce decree be modified to eliminate Dean's alimony obligation.[2]

Because of Dean's death and the reduction in his assets since the divorce, the trial court concluded that a change in circumstances had occurred. Consequently, the court reduced the alimony payments to $270 per month until Mary's death or re-

## ISSUE I

▐ The co-executors' first issue is that the trial court abused its discretion in adjusting the alimony obligation to $270 per month rather than terminating it entirely. Mary, on the other hand, does not argue that the modification was erroneous, but only that it be affirmed.

Generally, in the absence of an agreement between the spouses, the obligation to pay alimony ceases on the death of the obligor spouse. *See* 1 A. Lindey, *Separation Agreements and Ante–Nuptial Contracts* § 15.10 A(1) (1987); 2A W. Nelson, *Divorce & Annulment* § 17.20 (2d ed. 1961); Annot. 39 A.L.R.2d 1406 (1955). *Cf. Tyler v. Tyler*, 89 S.D. 462, 233 N.W.2d 804 (1975) (In affirming the trial court's award of alimony for the wife's lifetime, the court rejected the husband's contention that the award was an unfair penalty against the husband's heirs.)

In this case, however, Mary and Dean executed an agreement that Dean's alimony obligation was to continue following his death.[3] Because Dean's obligation rested upon a clear agreement between the parties, which was incorporated into the divorce decree, the obligation was enforceable under terms of the agreement. *Lindey, supra* § 15.10 B(1); *Nelson, supra* fn. 35; *Annot., supra* § 5.

▐ Despite a settlement agreement, the trial court may exercise its discretion and modify alimony; the trial court's alimony determination will be upheld unless its discretion was abused. *Wilson v. Wilson*, 399 N.W.2d 890 (S.D.1987); *Moller v. Moller*, 356 N.W.2d 909 (S.D.1984). In claiming

---

1. Specifically, the settlement agreement stated: "It is further agreed by the parties hereto that said payments of alimony shall continue following the death of Defendant [Dean] in the event his death should occur prior to Plaintiff's death or her remarriage."

2. One of the co-executors was Mary and Dean's daughter.

3. The agreement indicated that its sole purpose was "to adjust and settle the issues of alimony, division of property and assumption of financial obligations ..." In addition to the alimony provisions, Dean paid Mary $45,000 as a property settlement. In return, Mary gave up all her rights to marital property in Florida, in Davis, South Dakota, and in the family residence.

that this discretion was abused the executors' primary argument is that the income producing ability of the estate is insufficient and that continuing the alimony payments will eventually result in Mary receiving all of the property just as if she were a surviving spouse. At the time Dean and Mary entered into the settlement agreement they could have foreseen that Dean's property might eventually be dissipated if his alimony obligation were extended beyond his death. Thus, the executors essentially argue that they should be relieved of what they now perceive to be Dean's bad bargain. But courts are not required to relieve parties from such bad bargains. *Moller, supra.* None of the executors' arguments persuade us that the trial court abused its discretion in continuing the alimony obligation in a reduced amount.

### ISSUE II

■ The second issue is whether the trial court abused its discretion in awarding Mary attorney's fees of $538.97. The trial court properly considered the factors to be applied in making such an award. *E.g. Temple v. Temple,* 365 N.W.2d 561 (S.D. 1985) (specifying the factors a trial court is to consider in awarding attorneys' fees).

### APPELLATE ATTORNEY'S FEES

Mary is awarded appellate attorney's fees in the amount of $750.00.

The judgment of the trial court is affirmed.

WUEST, C.J., MORGAN and SABERS, JJ., concur.

HENDERSON, J., dissents.

HENDERSON, Justice (dissenting).

This Court has never specifically addressed the issue of a continuance of alimony beyond the death of the husband, either by virtue of a settlement agreement or its nonexistence. Generally, this Court has

only expressed that alimony may be modified where a settlement agreement exists. *Moller v. Moller,* 356 N.W.2d 909 (S.D. 1984).

In the absence of an agreement between the spouses, an obligation to pay alimony ceases on the death of the obligor spouse. *White v. White,* 48 Ohio App.2d 72, 2 Ohio Ops.3d 48, 355 N.E.2d 816 (1975). An obligation to pay alimony terminates on the death of the obligor, unless there is an expression of clear intent to the contrary. *Schartle v. Trust Co. Bank,* 239 Ga. 248, 236 S.E.2d 602 (1977). It is a general rule that the alimony provisions of a divorce decree do not bind the husband's estate, but it is also well settled that a husband and wife may enter into a *separation agreement* "calling for the continuation of payments to the wife after the husband's death." Annot., 5 A.L.R.4th 1153, 1157 (1981) (footnote omitted). Was the Lodde agreement a "separation agreement"?[1] If so, there is no public policy against the requirement of making periodic payments to the wife as a binding provision on the husband's estate. 5 A.L.R.4th, *supra.* Obviously, common sense dictates that if the estate is unable to pay, then notwithstanding a contractual provision, the provisions of the agreement for the continuance of payments should abate. If there is no need for alimony, even though such a provision has been made part of a separation agreement, alimony payments should abate. There must be a need for alimony and a justification for it. In simple language, *should* the estate pay alimony? And, under the facts of this case, *ought* the estate pay alimony? *See Straub v. Straub,* 381 N.W.2d 260 (S.D.1986); *Grant v. Grant,* 5 S.D. 17, 57 N.W. 1130 (1894). Note that the majority opinion refers to the agreement as being a "settlement agreement." It does not say that it was a property settlement agreement. Property settlement agreements cannot be set aside by subsequent modification. *Blare v. Blare,*

1. *See* M. O'Kelly, *Entitlements to Spousal Support After Divorce,* 61 N.D. Law Rev. 225, 232 (1985), for expression that considerable confusion can be avoided by not blurring the separation of inquiries into (a) alimony in the sense of spousal maintenance as distinguished from (b) alimony in the nature of a property settlement. Ordinarily, post-marital property distributions are not subject to judicial modification. *Id.* at 233.

302 N.W.2d 787 (S.D.1981). So it is a mystery to me as to why the majority opinion camps down, with vigor, upon its rationale that this decedent should be held to a "bad bargain"—notwithstanding (a) if it does not make sense, or (b) it is inequitable, unjust, or unfair, or (c) that the estate simply cannot pay it. We should not be deciding this case on contract principles. This is not a case of a rescission of a contract. As I have often referred to her, we are at the door of the Lady of Equity. Therefore, equitable principles apply and not contract principles.

In this Court, we examine the briefs and the issues confronting us and make decisions based upon those framed issues. We have, of course, decided important constitutional questions, *sua sponte.* In the case before us, the litigants have framed the issue as an issue of the trial court's discretion. In reducing the award from $300.00 to $270.00, the trial court exercised its discretion and the co-executors strongly assert, on behalf of the estate, that the alimony award should have been totally eliminated; their advocacy, at this level, was presented to the trial judge, so it is fairly before us. Discretion of the trial judge is at issue, not the propriety of the trial judge's decision on contract principles.

This Court can do something about the lower court's decision if it chooses to because it has the unique statutory power to do so under SDCL 25-4-46, which specifically empowers it to revise a trial court's order regarding alimony. *See also Kressly v. Kressly,* 77 S.D. 143, 87 N.W.2d 601 (1958).

The trial court's decision that Dean Lodde's estate continue to pay alimony to Mary Lodde should be reversed. This rationale is based, *inter alia,* upon the trial court's failure to pay deference and import to the following schedule of appellee's income sources before and after her ex-husband's death.

| BEFORE EX-HUSBAND'S DEATH | | AFTER EX-HUSBAND'S DEATH |
| --- | --- | --- |
| $300 | Alimony | $270 |
| 135 | Interest | 135 |
| –0– | Social Security | 306 |
| $435 | Total | $711 |

Mary was fifty-nine years old at the time of the show cause hearing in June 1986. In August 1986, Mary would turn sixty, and she would then qualify for social security income of $306.00 per month as a divorced widow. Not only did her husband support her during his lifetime, but he was supporting her to the extent of $306.00 per month even though he was dead and buried. This $306.00 per month increased payment should have been taken into consideration by the trial court and it was not, for the trial court gave the estate absolutely no credit for this totally new and changed circumstance.

Rooted in the provisions of the separation agreement between the Loddes, the trial court and Supreme Court adjudicates a $30.00 per month diminution in the alimony obligation. Per the findings of fact and conclusions of law, the trial court recognized that there were changed circumstances. A modification seems to have been determined by reference to appellee's claimed needs, while totally disregarding the current capability of a greatly reduced estate to produce income. Unjust is the net result, in contradiction to our statute which requires alimony awards to be just, given only where the circumstances of both parties are considered. A ritual recitation that courts are not required to relieve parties from bad bargains, per *Moller,* 356 N.W.2d 909, does not suffice, as the scales of justice tilt much differently here. In *Moller,* the Court noted that the trial court's authority to modify was not affected by the agreement; the only issue to be considered was whether a change of circumstances warranted modification. *Moller,* 356 N.W.2d at 912. *See also Connolly v. Connolly,* 270 N.W.2d 44 (S.D.1978). Therefore, we are not to consider simply the agreement but the circumstances of the parties and to determine if a modification

was warranted. Discretion. Was there an abuse of discretion? This is the issue before us. Not good bargain or bad bargain.

Dean Lodde's property, at the time of the divorce, was valued at approximately $136,000. Of this total, appellee-Mary was awarded $45,000, leaving decedent with $91,000. At the time of ex-husband's death, nine years later, his estate had dwindled to $71,000. In his last years, ex-husband was forced to borrow money to make alimony payments to his ex-wife, the records shows. The income generated by his property was hopelessly inadequate even for his own needs. His 1985 tax return indicated a loss in excess of $10,000, which resulted from a small farming operation and a variety store in the little town of Davis, South Dakota. After his death, the estate had liabilities of roughly $35,000, leaving a net of $36,000 in the estate. The income from his farm and store was, as noted above, insufficient to break even.

Mary Lodde, in contrast to her ex-husband's desperate efforts, chose to sit back and live off her interest and alimony, dipping into her reserves from the property award as needed. She worked in a drugstore for two years, when she needed money immediately after the divorce, but quit that job (or was fired for not going to work, testimony differed on this at trial). She mismanaged her funds, but still had at least $20,000 invested at the time of trial. In addition, she was to become eligible to receive $306.00 monthly from social security, based on Dean's contributions, six months after the court ordered the estate to continue to pay alimony. It is of interest that, at the time of the hearing in 1986, neither appellee-Mary nor her attorney had bothered to look into this added source of income. This is, in itself, a change of circumstances which would justify a reduction in her alimony. Neither the original divorce decree nor the separation agreement made any reference to this entitlement. It is impossible to argue that these future payments had been considered by them in 1976. These circumstances are very different from those in *Moller*, where this Court held military retirement pay to have been a factor considered by the trial court although the record was silent on the matter,

as in that case, the husband was receiving the pay at the time of the divorce. The Lodde's separation agreement itself provides, *inter alia:*

14. This Agreement has been entered into based upon representations made by each of the parties concerning their assets and liabilities and in the event a material variation between said assets and liabilities as represented and the actual amounts thereof which may later be found to exist, the parties agree that appropriate remedies may be pursued to enforce each's [sic] rights, including the relief of recission [sic], modification and/or damages.

The $306.00 social security payments are indeed material, as they are larger than the original $300.00 alimony payments. Mary Lodde came into court requesting that the payments be continued after ex-husband's death, as indeed they should have been, until she received her social security money. She had never requested modification on the grounds that the $300.00 alimony payments were too low.

The trial court, in its Memorandum Opinion, found appellee's expenses to be a minimum of $700.00 a month. Her income from interest and social security would be approximately $430.00 a month. As, the court opined, the estate had property worth $40,000, and an eight percent return on that amount would yield over $260.00 a month without invading the corpus of the estate, the estate was ordered to pay $270.00 alimony to Mary each month, making up for her income shortfall. This is absurd, in the context of this case. Arriving at this $270.00 figure was an arithmetic gymnastic, not based upon sound rationale.

The evidence reflected a $10,000 loss by ex-husband the year before his death. After his death, his store barely broke even. His daughter could not pay herself wages. Part of the estate's holdings was an undivided half-interest in land valued at $22,950. There is no reasonable basis for the trial court's opinion that the estate could earn enough to cover the alimony payments. The court's assessment of the estate's value at $40,000 seems to have been

reached because that figure was easy to work with rather than any correlation to the evidence. In sum: The co-executors of the estate are to keep the estate open to pay off alimony until Mary Lodde dies.[2] This despite the fact that she now has income, even without alimony, greater than she had before Dean's death, when he paid her alimony. The co-executors, one of whom is appellee's daughter, are thus put in the position of alimony slaves: They must work for her benefit until her death, at which point they are freed from their servitude. Appellee's daughter does not really reap any benefit from the estate's reimbursing her for administration costs, as it is obvious that the court's arrangement will devour the assets of the estate, to which she was an heir, per Dean Lodde's will. Given the estate's lack of income, the burden imposed by alimony, and the costs of administering the estate, even appellee, the supposed beneficiary, will not get her way, as the estate will be entirely consumed in a few years. Of what worth will her award be then?

The majority opinion cites *Tyler v. Tyler*, 89 S.D. 462, 233 N.W.2d 804 (1975), for the proposition that alimony after death is not an unfair penalty against the ex-husband's heirs. *Perhaps it was true, as the husband was still alive.* Any harm to the heirs was speculative as the ex-wife could very well predecease the ex-husband. No case or controversy arose there. Here, we see the harm, uncertain in *Tyler*, in all its terrible manifestations. The problems created for the heirs (in this case, one of whom is co-executor) include defeating the scheme of distribution in the ex-husband's will, holding the estate open for an extended period, and inconvenience to the children. *See generally* 2 H.H. Clark, Jr., *The Law of Domestic Relations in the United States*, § 17.6, at 293 (2d ed. 1987). This Court, statutorily charged to look to the equities, should not dismiss such concerns out-of-hand.

If Mary Lodde is truly incapable of work because of her back problems and "bad colds" (refuted by her own flesh and

blood), her adult daughters have the statutory obligation to support her, as provided in SDCL 25–7–28. Failure of the child to provide such support is a Class 1 misdemeanor (SDCL 25–7–29). There is, therefore, no risk that a helpless Mary Lodde will become a public charge, a concern that many courts have used to justify alimony in the past. *See Connelly v. Connelly*, 362 N.W.2d 91, 92 (S.D.1985) (Henderson, J., dissenting). She has two married daughters to support her, one of whom is, by the majority opinion, to support her in the guise of co-executor. The court's choice is, surely, the least efficient means of seeing to Mary Lodde's needs.

The trial court, while given great leeway in exercising its discretion regarding alimony, can be reversed where that discretion is clearly abused. *Cole v. Cole*, 384 N.W.2d 312 (S.D.1986); *Goehry v. Goehry*, 354 N.W.2d 192 (S.D.1984). We have, in the past, reduced alimony in cases where a husband's income was drastically reduced. *See Wilson v. Wilson*, 399 N.W.2d 890, 891 (S.D.1987). Here, we did not go far enough.

Appellee has greater income than the estate. She has lived for six years without working, instead choosing to live on her alimony, interest, and property award (equal to one-third of the marital estate's property, the elective share she could have claimed at Dean's death had they remained married). She has received work training, has no severe health problems, and could have worked had she chosen to. Her children are grown. There is no great disparity between her assets and those remaining in the estate. Her assets are liquid; the estate's are not. Shortly after the trial, she became eligible for social security payments greater than the alimony she had been receiving all along (a windfall). Her ex-husband Dean seems to have worked himself into the grave to support her, a situation I warned of in *Lampert v. Lampert*, 388 N.W.2d 899,904 (S.D.1986) (Henderson, J., dissenting). Any change of

---

**2.** This record reflects that she offered absolutely no evidence of any serious effort to find em-
ployment.

circumstances to her detriment was due to her own inaction and mismanagement. *See Nauman v. Nauman,* 320 N.W.2d 519 (S.D.1982) (where an ex-husband's neglect of his business interests was not considered a basis for modification). Here, the shoe is on the other foot. Equity is a two-way street. The estate should have been freed of her.

It is said that there is nothing in life that is certain other than death and taxes. Now, in South Dakota, it is death, taxes and alimony.

This case illustrates the folly of awarding permanent alimony until the death of the recipient where the facts do not call for it. An award of this type is justifiable where, for example, one party is disabled as was done in *Tyler,* 233 N.W.2d 804. Here, the award served only to make Mary Lodde totally dependent on others, though she was only forty-nine years old. From a policy viewpoint, both society and the lady herself would be better off if she had been encouraged, initially, to enter the job market, get retrained, and use her potential. *See* R.S. Sackett & C.K. Munyon, *Alimony: A Retreat from Traditional Concepts of Spousal Support,* 35 Drake L.Rev. 297, at 319 (1985–86).